PER CURIAM.
The Tax Court granted summary judgment to the Essex County Board of Taxation (Board) and directed the Borough of Caldwell to revalue all of the real property within the municipality based upon an order issued by the Board in 1986. Essex County Bd. of Taxation v. Township of Caldwell, 19 N.J.Tax 587, 598 (Tax 2001). The Tax Court granted the Board summary judgment and directed the revaluation despite the fact that the 1986 revaluation order had not been followed or enforced in over sixteen years. We conclude that the Tax Court correctly required Caldwell to complete the revaluation and affirm.
I.
We first recount the pertinent facts and procedural history. Caldwell last conducted a municipal-wide revaluation of its real property in 1970, over thirty years ago. In 1986, the Board ordered Caldwell to revalue its real property. At that time, Caldwell’s general coefficient of deviation was 16.64. A coefficient of deviation is a statistical computation of the degree of uniformity of assessments within a taxing district. Handbook for New Jersey Assessors, revised June 1989, page VIII-4. “A lower coefficient of *191 deviation indicates a better degree of uniformity in the taxing district.” Ibid.
The general coefficient of deviation “is an average deviation from average assessment ratio expressed as a percentage of average assessment ratio for each taxing district, for all properties included in ‘usable sales.’” N.J.A.C. 18:12A-1.14(b)i. It is the average deviation of individual assessment-sales ratios from the overall average assessment to sales ratio of all sales occurring within the taxing district. Handbook, supra, at page VIII-5. It measures “variation in assessment-sales ratio of all properties sampled without regard to property class, property size, or any other property characteristic.” N.J.A.C. 18:12A-1.14(b)i.[1] “A general coefficient of deviation of 15% or less is considered acceptable.” Handbook, supra, at page VIII-5. A “coefficient of deviation above 15 generally denotes lack of uniformity in assessments.” N.J.A.C. 18:12A-1.14(b)(1).
Caldwell never appealed the 1986 Board revaluation order, and has taken no steps to comply with the order. The Board did not pursue enforcement of the order until June 24, 1993, when it compelled Caldwell to explain why a revaluation had not been conducted. Caldwell argued that between 1986 and 1993, the coefficient of deviation dropped below 15% in some years, and as a result, a revaluation was unnecessary and its costs unjustified. The Board nevertheless indicated it intended to enforce the 1986 order.
A period of inactivity followed and while Caldwell continued to do nothing, the Board likewise failed to follow-up. Finally, a letter from West Caldwell’s mayor on November 20, 1995 informed the Board that Caldwell still had not revalued. Subsequently, on January 4, 1996, the Board adopted a resolution requesting the Attorney General to enforce its 1986 order.
*192 On February 1, 2001, five years after that resolution, the Attorney General filed a complaint in lieu of prerogative writs against Caldwell in the Law Division seeking to enforce the 1986 order. The record does not explain why the Board took no action from 1986 through 1993 and why there was a five year delay between the Board’s 1996 resolution and the Attorney General’s action in 2001. In any event, the Law Division transferred the matter to the Tax Court.
The Board moved for summary judgment, but Judge Bianco expressed concern over whether the 1996 resolution was properly passed under the Open Public Meetings Act, N.J.S.A. 10:4-6 to - 21. As a result, the Board properly adopted a new resolution on November 8, 2001, affirming the 1996 resolution and again requesting enforcement of its 1986 order.
Caldwell claimed enforcement of the revaluation order would cause “inequality of treatment and lack of uniformity, in violation of the statutes ... and the Constitution of the State of New Jersey, Article VIII, Section 1.” Caldwell explained that four other Essex County municipalities that are not under a municipal-wide revaluation order had higher general coefficients of deviation in 2001 than did Caldwell, which had a 16.00 coefficient. Caldwell pointed to the following municipalities which all had higher general coefficients than Caldwell: Glen Ridge — 19.78; Montclair— 18.80; Nutley — 16.09; and South Orange — 19.78.
Judge Bianco, after hearing oral argument, issued a written decision. In pertinent part, the judge rejected Caldwell’s argument that the complaint in lieu of prerogative writs was untimely under R. 4:69-6(a). Township of Caldwell, supra, 19 N.J.Tax at 596-97. The judge found the timeliness issue and the merits controlled by our decision in Essex County Bd. of Taxation v. Newark, 340 N.J.Super. 432, 774 A.2d 655 (App.Div.2001), certif. denied, 170 N.J. 387, 788 A.2d 772 (2001), which enforced a twenty-nine year old revaluation order in an in lieu of prerogative writs action that was filed after the forty-five day filing period had passed. Consequently, the judge granted the Board summary judgment and ordered enforcement. This appeal followed.
*193 II.
Caldwell presses the following three issues in its appeal: (1) that the Tax Court erred by finding the Board’s complaint in lieu of prerogative writs timely; (2) that the judge erred by dismissing its counterclaim, which alleged that revaluation will cause unconstitutional disparate tax treatment within the county; and (3) that summary judgment was inappropriately granted because a factual dispute exists regarding whether there is sufficient taxation inequality within Caldwell at this time to warrant revaluation. We consider each of these issues in turn.
(1)
We assume for purposes of this decision that the Board’s action against Caldwell was properly brought as an action in lieu of prerogative writs.[2] Generally, actions in lieu of prerogative writs must be filed not later than “45 days after the accrual of the right to review, hearing or relief claimed.” R. 4:69-6(a). Caldwell suggests that because the 1986 revaluation order by its terms was to be implemented for the 1988 tax year, the Board’s “right to enforce the action began upon Caldwell’s failure to comply in 1988.” Caldwell contends that the Tax Court improperly granted an enlargement of time without reviewing either the current need *194 for revaluation or why the Board waited almost fifteen years to enforce the order.
The Tax Court rejected this argument by pointing out that it was “clear from the facts in [Essex County Bd. of Taxation v. Newark, supra, 340 N.J.Super. at 435-36, 774 A.2d 655] that more than forty-five (45) days had passed before legal action was commenced against the City.” Township of Caldwell, supra, 19 N.J.Tax at 596. However, no party raised the timeliness issue in Newark, and consequently we did not rule on the issue.
Courts may enlarge the 45 day time frame for prerogative writs actions “where it is manifest that the interest of justice so requires.” R. 4:69-6(c). The interests of justice have been found to require enlargement when there are “(1) important and novel constitutional questions; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification.” Brunetti v. Borough of New Milford, 68 N.J. 576, 586, 350 A.2d 19 (1975).
The Supreme Court has added one other significant factor in determining whether to enlarge the in lieu of prerogative writs time frame. That factor includes “whether there will be a continuing violation of public rights.” Reilly v. Brice, 109 N.J. 555, 559, 538 A.2d 362 (1988); L. Pucillo & Sons, Inc. v. Township of Belleville, 249 N.J.Super. 536, 543, 592 A.2d 1218 (App.Div.), certif. denied, 127 N.J. 551, 606 A.2d 364 (1991). Here, Caldwell failed to comply with the 1986 revaluation order, and continues to disobey the order. It perpetuates the alleged tax inequality that was found by the Board and adversely affects citizens in Caldwell as well as other citizens in the county. Consequently, assuming, as did the parties, that this action was properly brought as an in lieu of prerogative writs action, we conclude that it was appropriate for the Tax Court to enlarge the forty-five day time frame to permit the Board to enforce its order.
(2)
Next, Caldwell argues that because uniformity is required throughout the county, it is unfair and unconstitutional to compel *195 Caldwell to revalue in light of the fact that four other Essex County municipalities with higher general coefficients of deviation were not also under orders to revalue.
In Switz v. Middletown Township, 23 N.J. 580, 599, 130 A.2d 15 (1957), the Supreme Court held that revaluation should proceed in the municipality in question despite “the obvious need of joint action under the one standard by all such municipalities” within the county. The fact that some municipalities have higher deviations than Caldwell is not a sufficient reason by itself for Caldwell to ignore its own responsibility to conduct a revaluation. “The mere fact that a law has not been fully enforced against others does not give a defendant the right to violate it.” Township of Saddle Brook v. A.B. Family Ctr., Inc., 307 N.J.Super. 16, 23, 704 A.2d 81 (App.Div.1998), judgment aff'd and remanded, 156 N.J. 587, 722 A.2d 530 (1999)(quoting State v. Boncelet, 107 N.J.Super. 444, 453, 258 A.2d 894 (App.Div.1969)).
Caldwell must revalue to achieve the constitutional mandate of uniformity of taxes. That need is not diminished by the existence of a similar or greater need in other municipalities. There is no obligation on the Board in this litigation to show not only the appropriateness of its revaluation order, but also to explain its failure to enter revaluation orders in other municipalities.
(3)
Finally, Caldwell argues that under the Constitution and Handbook for New Jersey Assessors (revised 1989), revaluation is unnecessary because there “is no lack of uniformity or inequity” within Caldwell. The Board contends that the revaluation order is enforceable without any showing of current need for revaluation. The Board’s position is based on our decision in Essex County Bd. of Taxation, supra, 340 N.J.Super. at 432, 774 A.2d 655. There was nothing in that decision, however, which would preclude a municipality from claiming changed circumstances since entry of a revaluation order as a defense to an enforcement action. With lengthy delays between the order and enforcement, as occurred *196 here, changed circumstances could, at least theoretically, negate the need for a revaluation. Recession, inflation, changes in neighborhoods and regulatory legislation, for example, can all affect assessment inequalities within a municipality. That is not what happened here, however.
Our Constitution requires uniformity and equality in taxation. N.J. Const. art. VIII, § 1, ¶ 1(a). A rising coefficient of deviation indicates growing inequality within the taxing district. In 2001, Caldwell’s general coefficient of deviation was 16.00. This was considered by the Board just as unacceptable as it was in 1986.
We also find that N.J.A.C. 18:12A-1.14(b)(1) supports the Board’s assessment that Caldwell’s deviation is unacceptable. Based on its location directly under the section dealing with segmented coefficients of deviation, the part of the rule which provides that “[f]or the above purpose, a coefficient of deviation above 15 generally denotes lack of uniformity in assessments,” could be read to apply only to segmented coefficients of deviation. N.J.A.C. 18:12A-1.14(b)(1). (Segmented coefficients measure “uniformity or lack thereof of one property class compared to other property classes.” N.J.A.C. 18:12A — 1.14(b)iii.) Such a limitation on acceptable deviation would be significant in this case because the coefficients of deviation used by the Board to assess Caldwell’s tax inequality were general, which measure deviation without regard to property class, property size, or any other property characteristic.
The language of N.J.A.C. 18:12A-1.14(b), however, does not limit the 15% acceptable deviation standard to any particular type of deviation, whether segmented or general. In addition, N.J.A.C. 18:12A-1.14(b)(l) begins by stating “For the above purpose” and then proceeds to specify the 15% acceptable deviation standard. Because the immediately preceding sections (i, ii, iii) merely define three types of coefficients of deviation, the “above purpose” must refer to the purpose, stated before the three definitions, of determining the need to order a taxing district to revalue its real property. N.J.A.C. 18:12A-1.14(b). Moreover, the Division of Taxation has indicated in its Handbook for New Jersey Assessors *197 that the 15% deviation applies to general coefficients of deviation. Handbook, supra, at p. VIII-5.
The Handbook is issued by the Department of Treasury, Division of Taxation and “expresses the [Division of Taxation’s] interpretation of current law ...” Colton Homes, Inc. v. Township of West Windsor, 15 N.J.Tax 231, 259 (Tax 1995). The Division issued the Handbook to assist tax assessors in carrying out their duties, ibid., and in dealing with the determination of tax inequality. It, therefore, constitutes the Division’s understanding of N.J.A.C. 18:12A-1.14(b)(1). An agency’s interpretation of its own rule is owed considerable deference because the agency that drafted and promulgated the rule should know the meaning of that rule. In re Revision in Rates Filed by Plainfield-Union Wafer Co., 57 N.J.Super. 158, 177, 154 A.2d 201 (App.Div.1959).
Furthermore, we note that the Director of the Office of Administrative Law has authority to “number or renumber the parts, paragraphs and sections” into which rules are divided, N.J.S.A. 52:14B-7(f), though the promulgating agency head retains control over the rule’s meaning. Consequently, when there is an apparent discrepancy between the rule’s structure and the promulgating agency’s expression of its intended meaning, it is the promulgating agency’s intention which controls.
Accordingly, we conclude that despite the rule’s placement within the administrative code, the 15% standard applies to general coefficients of deviation. Though we apply the deviation standard here to general coefficients, we strongly suggest to the Division of Taxation that it clarify the rule’s intended meaning.
Applying this standard, Caldwell’s deviation has been unacceptable for three out of the last four years. Since 1991, at its lowest the general coefficient was 13.37 in 1999, but it was as high as 19.91 in 1995. Undoubtedly, these unacceptable levels are indicative of the fact that Caldwell has not revalued its real property in thirty-two years.
Additionally, the true value of property in Caldwell, which is ascertained on a yearly basis by the county tax administrator, is *198 assessed far below its correct rate. N.J.S.A. 54:3-17. The rates, which are published in the New Jersey Lawyer’s Diary and Manual (2003), p. 240, show that Caldwell’s assessed-to-true value is only 18.90 when it should be closer to 100.00. Caldwell has the third' lowest assessed-to-true value of real property within1 all of Essex County.
Thus, Caldwell’s real property values since 1986 have not made revaluation less necessary. If anything, the passage of time, in our opinion, has had the opposite effect. Revaluation is necessary. We discern no genuine issues of fact, even if they were decided in favor of Caldwell, that would cast any doubt upon this conclusion. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995).
Affirmed.

 Coefficients can also measure stratified deviation, which compares assessment levels within property classes, and segmented deviation, which compares one property class with another. N.J.A.C. 18:12A-1.14(b)ii, iii; Christian Asset Mgmt. Corp. v. City of East Orange, 19 N.J.Tax 469, 478 (Tax 2001) (discusses coefficients of deviation).

 The 1947 Constitution consolidated the pre-existing writs of certiorari, quo warranto, prohibition and mandamus into one action, in lieu of prerogative writs. NJ. Const, art. VI, § V, ¶ 4; In re LiVolsi, 85 N.J. 576, 593, 428 A.2d 1268 (1981)(describes the pre-existing prerogative writs). To constitute an in lieu of prerogative writs action, however, the dispute must fit within one of the pre-existing writs. Alexander's Dep't Stores of N.J. v. Borough of Paramus, 125 N.J. 100, 107, 592 A.2d 1168 (1991).
In lieu of prerogative writs actions are usually brought only by individuals. No court appears to have as yet focused on whether an in lieu of prerogative writs action can be brought by a county governmental entity against a municipality to enforce the county entity’s order. The most relevant potential writ would be mandamus. See Essex County Bd. of Taxation v. City of Newark, 139 N.J.Super. 264, 268, 353 A.2d 535 (App.Div.1976), where we characterized an action similar to the instant dispute as "in lieu of prerogative writ of mandamus against the city and its tax assessor.” Note also that R. 4:67-6 provides a summary proceeding to enforce agency orders but applies only to "a state administrative agency as defined by N.J.S.A. 52:14B-2(a).”