NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1038-12T2
                    A-1445-12T2
                    A-1636-12T2
                    A-1792-12T2

NEW JERSEY HEALTHCARE COALITION,
ALLIANCE FOR QUALITY CARE, INC.,
NEW JERSEY ASSOCIATION OF
AMBULATORY SURGERY CENTERS, NEW
JERSEY ASSOCIATION OF OSTEOPATHIC
PHYSICIANS AND SURGEONS, NORTH
JERSEY ORTHOPAEDIC SOCIETY,
ATLANTIC ORTHOPEDIC ASSOCIATES, LLC,
and NEW JERSEY STATE SOCIETY
OF ANESTHESIOLOGISTS,

        Appellants,

v.

NEW JERSEY DEPARTMENT OF BANKING
AND INSURANCE,

        Respondent.

_____

NEW JERSEY COALITION FOR QUALITY
HEALTHCARE,

        Appellant,

v.

NEW JERSEY DEPARTMENT OF BANKING
AND INSURANCE,

        Respondent.

_____

APPROVED FOR PUBLICATION

March 31, 2015

APPELLATE DIVISION

NEW JERSEY ASSOCIATION FOR JUSTICE,

      Appellant,

v.

NEW JERSEY DEPARTMENT OF BANKING
AND INSURANCE,

      Respondent.

_____

UNITED ACUPUNCTURE SOCIETY OF NEW
JERSEY,

      Appellant,

v.

NEW JERSEY DEPARTMENT OF BANKING
AND INSURANCE,

      Respondent.

_____

Argued October 28, 2014 — Decided March 31, 2015

Before Judges Reisner, Haas and Higbee.

On appeal from the Department of Banking and
Insurance.

Keith J. Roberts argued the cause for
appellants in A-1038-12 (Brach Eichler,
attorneys; Mark E. Manigan, Mr. Roberts and
John D. Fanburg, of counsel; Mr. Roberts and
Richard B. Robins, on the brief).

A. Ross Pearlson argued the cause for
appellant New Jersey Coalition for Quality
Healthcare in A-1445-12 (Wolff & Samson,
attorneys; Mr. Pearlson, on the brief).

Gerald H. Baker and Daniel E. Rosner argued
the cause for appellant New Jersey
Association for Justice in A-1636-12 (Scott G.

Leonard, President, attorney; Mr. Baker and Mr. Rosner, on the brief).

Shay S. Deshpande argued the cause for appellant United Acupuncture Society of New Jersey in A-1792-12 (Zwerling & Deshpande, attorneys; Mr. Deshpande, of counsel and on the brief; David J. Zwerling, on the brief).

Daniel J. Kelly, Deputy Attorney General, argued the cause for respondent New Jersey Department of Banking and Insurance (John J. Hoffman, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mr. Kelly, on the brief).

Susan Stryker argued the cause for intervenors Insurance Council of New Jersey and The Property Casualty Insurers Association of America (Bressler, Amery & Ross, attorneys; Ms. Stryker, of counsel and on the brief).

Anthony J. Murgatroyd argued the cause for amicus curiae New Jersey State Bar Association (Sharon A. Balsamo, Counsel & Director of Legal Affairs, attorney; Kevin P. McCann, of counsel and on the brief; Mr. Murgatroyd, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

This appeal is the latest battle in a long-running conflict between health care providers and other interested parties, and the Department of Banking and Insurance (the Department), over the Department's personal injury protection (PIP) regulations.

In this dispute, appellants[1] challenge the Department's 2012 revised PIP regulations addressing reimbursable medical procedures and the facilities in which they can be performed, the fees health care providers can charge for those procedures, counsel fees that may be awarded at PIP arbitration, and other related issues. See 44 N.J.R. 2652(c) (Nov. 5, 2012).[2]

---

[1] Appellants are New Jersey Healthcare Coalition, Alliance for Quality Care, Inc., New Jersey Association of Ambulatory Surgery Centers, New Jersey Association of Osteopathic Physicians and Surgeons, North Jersey Orthopaedic Society, Atlantic Orthopedic Associates, LLC, and New Jersey State Society of Anesthesiologists (A-1038-12); New Jersey Coalition for Quality Healthcare (A-1445-12); New Jersey Association for Justice (A-1636-12); and United Acupuncture Society of New Jersey (A-1792-12). The New Jersey State Bar Association filed an amicus curiae brief supporting appellants. The Insurance Council of New Jersey and the Property Casualty Insurers Association of America intervened in support of the Department.

[2] The Department adopted new rules to be codified as N.J.A.C. 11:3-4.7A, 4.7B, 29.5, and N.J.A.C. 11:3-29 Appendix, Exhibits 1 through 7; adopted amendments to N.J.A.C. 11:3-4.2, 4.4, 4.7, 4.8, 4.9, 5.2, 5.4, 5.5, 5.6, 5.12, and 29.1 through 29.4, and repealed N.J.A.C. 11:3-29 Appendix, Exhibits 1 through 7. As further discussed in this opinion, the Department delayed the effective date of N.J.A.C. 11:3-4.7B pending contemplated further amendments. The adoption of the remaining provisions followed an extensive public process that started with an August 1, 2011 rule proposal. After receiving and responding to numerous public comments, the Department published proposed rule changes, which were subject to another exhaustive round of public comments, to which the Department responded in detail. The current rules were adopted on November 5, 2012, and with the exception of subsection 4.7B and an amendment not germane to these appeals, became operative on January 4, 2013. Both this court and the Supreme Court denied appellants' application for a stay pending appeal.

The litigants, and this court, have plowed the same ground several times in the course of successive challenges to the Department's original and revised regulations. The most enduring subject of dispute has been N.J.S.A. 39:6A-4.6, which authorizes the Department to adopt, for providers of medical care under the PIP statute, medical fee schedules "on a regional basis," that "incorporate the reasonable and prevailing fees of 75% of the practitioners within the region."

The legislative scheme, its history and purpose, and the regulatory background, have been reviewed at length in our prior opinions and need not be repeated in detail here. See, e.g., In re Adoption of N.J.A.C. 11:3-29, 410 N.J. Super. 6 (App. Div.), certif. denied, 200 N.J. 506 (2009); Coal. for Quality Health Care v. N.J. Dep't of Banking & Ins., 358 N.J. Super. 123 (App. Div. 2003) (Coalition III); In re Comm'r's Failure to Adopt 861 CPT Codes, 358 N.J. Super. 135 (App. Div. 2003); Coal. for Quality Health Care v. N.J. Dep't of Banking & Ins., 348 N.J. Super. 272 (App. Div.), certif. denied, 174 N.J. 194 (2002) (Coalition II); N.J. Coal. of Healthcare Prof'ls. Inc. v. N.J. Dep't of Banking & Ins., 323 N.J. Super. 207 (App. Div.), certif. denied, 162 N.J. 485-86 (1999) (Coalition I). From the beginning, we have made clear that it is not our role to second-guess the Department's policy choices concerning the implementation of the legislative scheme aimed at reducing

insurance costs while expediting medical treatment for accident victims.  See Coalition I, supra, 323 N.J. Super. at 269.  We find no basis to do so here, and we affirm the Department's adoption of the challenged regulations.[3]

I

Our standard of review on this appeal is well-understood and limited.  "Administrative regulations are accorded a presumption of validity."  N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222 (1999).  That deference "stems from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are 'particularly well equipped to read and understand the massive documents and to evaluate the factual and technical issues that . . . rulemaking would invite.'"  Ibid. (quoting Bergen Pines Cnty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 474 (1984)).

As we stated in a prior case involving this same regulatory scheme:

---

[3] Although, as will be discussed infra, many of appellants' arguments were raised and rejected in our prior opinions, and hence warrant more summary treatment here, we publish this opinion because PIP reimbursement is a matter of general public importance.  Moreover, we anticipate that the disputes addressed here will be the subject of periodic future appeals, and it is important to memorialize in a published opinion the Department's clarification of the regulations, as later noted in this opinion.  See R. 1:36-2(d)(6).

Administrative regulations are entitled to a presumption of validity and reasonableness. In re Protest of Coastal Permit Program Rules, 354 N.J. Super. 293, 329 (App. Div. 2002). We will generally defer to an agency's determination, and our deference is a function of our courts' recognition that "an agency's specialized expertise renders it particularly well-equipped to understand the issues and enact the appropriate regulations pertaining to the technical matters within its area." Id. at 330. "Particularly in the insurance field, the expertise and judgment of the Commissioner may be allowed great weight." In re Commissioner's Failure to Adopt 861 CPT Codes, supra, 358 N.J. Super. at 149. We will overturn an administrative determination only if it was arbitrary, capricious, unreasonable or violated express or implied legislative policies. Ibid. The party challenging the agency action bears the burden of overcoming the presumption of validity and reasonableness. Ibid.

[In re adoption of N.J.A.C. 11:3-29, supra, 410 N.J. Super. at 24-25.]

"'An agency's interpretation of its own rule is owed considerable deference because the agency that drafted and promulgated the rule should know the meaning of that rule.'" In re Freshwater Wetlands Gen. Permit No. 16, 379 N.J. Super. 331, 341-42 (App. Div. 2005) (quoting Essex Cnty. Bd. of Tax'n v. Twp. of Caldwell, 21 N.J. Tax 188, 197 (App. Div.), certif. denied, 176 N.J. 426 (2003)). In light of agency expertise, we "must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." In re Freshwater Wetlands Prot. Act Rules, 180

N.J. 478, 488-89 (2004).  However, an agency may not issue a regulation that is outside "'the fair contemplation of the delegation of the enabling statute,'" N.J. State League, supra, 158 N.J. at 222 (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-62 (1978)), or that is otherwise "inconsistent with legislative mandate." Id. at 222-23 (citations omitted).

We will reject challenges that "are fundamentally disagreements with the policies expressed in [the governing statutory scheme] and its implementing regulations." Coalition I, supra, 323 N.J. Super. at 269.  As we observed in adjudicating a prior challenge to the Department's regulations: "Under our system of government, these policy choices are made by the Legislature and implemented by the Executive.  We review the regulations to determine their legality, not to participate in the policy debate." Ibid. (citations omitted).

                                II

On this appeal, appellants have raised a plethora of issues, which can be summarized as follows[4]:

> I.  THE DEPARTMENT EXCEEDED ITS AUTHORITY IN SETTING NEW FEE SCHEDULES FOR PROVIDERS AND AMBULATORY SURGICAL CENTERS.

---

[4] The following list does not precisely track the point headings in each appellant's brief, but rather is intended as a synopsis of the multiple, often overlapping, issues they raised.

II. THE DEPARTMENT EXCEEDED ITS AUTHORITY OR ACTED ARBITRARILY IN CHANGING THE DEFINITION OF A "STANDARD PROFESSIONAL TREATMENT PROTOCOL."

III. THE DEPARTMENT ACTED ARBITRARILY IN ENDING PIP REIMBURSEMENT TO AMBULATORY SURGICAL CENTERS FOR CERTAIN PROCEDURES.

IV. THE DEPARTMENT ACTED ARBITRARILY BY MAKING ACUPUNCTURE PROCEDURES SUBJECT TO THE DAILY FEE CAP.

V. THE DEPARTMENT EXCEEDED ITS AUTHORITY BY ALLOWING INSURERS TO ASSIGN DUTIES TO PROVIDERS INSTEAD OF JUST ASSIGNING BENEFITS TO THEM.

VI. THE DEPARTMENT VIOLATED DUE PROCESS BY REQUIRING PIP ARBITRATIONS TO BE "ON-THE-PAPERS" FOR DISPUTES VALUED BELOW $1000.

VII. THE DEPARTMENT EXCEEDED ITS AUTHORITY BY LIMITING PIP ARBITRATION ATTORNEY FEE AWARDS.

VIII. THE DEPARTMENT ACTED ARBITRARILY BY REQUIRING INSURERS TO PAY ARBITRATION AWARDS OF ATTORNEY FEES TO THE PROVIDER RATHER THAN DIRECTLY TO THE ATTORNEY.

IX. THE DEPARTMENT EXCEEDED ITS AUTHORITY OR ACTED ARBITRARILY BY SETTING APPEAL DEADLINES SHORTER THAN THOSE SPECIFIED BY STATUTE.

X. THE REGULATIONS ARE INVALID BECAUSE THE DEPARTMENT DID NOT PRODUCE EVIDENCE TO SUPPORT ITS ASSERTION THAT INCREASED PIP COSTS WERE CAUSING UPWARD PRESSURE ON INSURANCE PREMIUMS.

Before turning to those issues, we deem it appropriate to address the proper scope of this appeal. In addition to challenging regulations that have been adopted and have taken

A-1038-12

effect, appellants appeal from Department regulations concerning internal appeals which are to be pursued prior to a demand for PIP arbitration (issue IX above). The effective date of those regulations has been postponed, in contemplation of further amendments. See 43 N.J.R. 1640-42 (proposed Aug. 1, 2011) (to be codified at N.J.A.C. 11:3-4.7B).[5] Because the regulations may be amended before they take effect, the issues raised here are not ripe and we decline to adjudicate them.

Having reviewed the record in light of the remaining issues, we conclude that the regulations do not represent an abuse of discretion, are sufficiently supported by the record, and on this facial challenge, are not inconsistent with the Department's governing statute.

The majority of appellants' issues are a rehash of contentions we have considered and rejected in prior cases. Most of the arguments represent a difference of view over policy choices the Legislature has entrusted the Department to make. Virtually all of the arguments were included in comments the parties submitted to the Department and were exhaustively and

---

[5] At the time this appeal was argued, the Department was considering amending the regulations by November 2014. The agency has again extended the regulations' operative date, until November 5, 2015, to "afford the Department additional time to consult with insurers and providers on necessary amendments to these rules, as was referenced in the notice of adoption." 46 N.J.R. 2159(a) (Nov. 3, 2014).

convincingly addressed by the Department, comment by comment, in its nearly 100 pages of responses accompanying the rule adoption. <u>See</u> 44 <u>N.J.R.</u> 2652(c). Except as further discussed herein, appellants' arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

While we find no merit in appellants' contentions overall, it is important to note certain clarifications by the Department which narrow the scope of the issues before us and will be important in the future application of these regulations. In that context, we briefly address the challenge to the regulations concerning counsel fee awards. <u>N.J.A.C.</u> 11:3-5.6(e)(1), (2). The rule essentially adopts the classic rubric set forth by the Supreme Court in <u>Rendine v. Pantzer</u>, 141 <u>N.J.</u> 292, 334-44 (1995).[6] However, appellants argue that, read literally, the rule departs from <u>Rendine</u> in that it would not allow an upward adjustment of the lodestar, as opposed to a downward adjustment. In its brief the Department advised us that it construes the regulation as also allowing an upward adjustment in an appropriate case; the Department's counsel confirmed that position at oral argument of this appeal.

---

[6] The lodestar calculation under the rule is also keyed to <u>Rule</u> 1.5 of the <u>Rules of Professional Conduct</u>. <u>N.J.A.C.</u> 11:3-5.6(e)(1).

In light of the Department's clarification, we deem that aspect of the appeal to be moot and, as so construed, the rules concerning calculation of the fees passes legal muster. Because the statute, N.J.S.A. 39:6A-5.2(g), specifically provides that "[f]ees shall be determined to be reasonable if they are consonant with the amount of the award," appellants' challenge to the proportionality analysis aspect of the fee rule is without merit. See also Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 366 (1995) ("The trial court's responsibility to review carefully the lodestar fee request is heightened in cases in which the fee requested is disproportionate to the damages recovered."). Of course, if an insurer wrongfully refuses to pay a small claim and forces the insured or the provider to respond to multiple meritless objections, we do not construe the regulation as precluding the dispute resolution professional (DRP) from awarding the claimant a counsel fee that reflects the time required to respond to the issues raised. See Velli v. Rutgers Cas. Ins. Co., 257 N.J. Super. 308, 310 (App. Div.), certif. denied, 130 N.J. 597 (1992).

Finally, because the regulation requires the DRP to set forth a written analysis of all factors pertaining to the fee award, it should be relatively easy to discern whether, in practice, the rule is being applied consistently with the principles set forth in Rendine and in the PIP statute. See

N.J.A.C. 11:3-5.6(d), (e). No further discussion on this point is warranted. R. 2:11-3(e)(1)(E).

Appellants also contend that another section of the regulations concerning counsel fees, N.J.A.C. 11:3-5.6(f), improperly precludes direct payments of counsel fees to medical providers' attorneys. In its brief, the Department has clarified that the rules do not preclude a DRP from ordering the payment of fees directly to a medical provider's attorney. In fact, the Department's brief advised us that it has "directed the administrator of the PIP arbitration system to notify users of the system that payments for attorneys' fees will continue to be processed with direct payment to the attorneys." Consequently, we conclude that the issue, which is understandably important to the attorneys who handle PIP cases, is moot.

Appellants also challenge N.J.A.C. 11:3-4.9(a), which provides that "an insured may only assign benefits and duties under the policy to a provider of service benefits." They contend that by referring to "duties," this section impermissibly requires the assignment of duties as well as benefits to a medical provider. They posit that the regulation will allow insurers and DRPs to impose burdensome discovery requirements on medical providers. In its brief, and as confirmed by its counsel at oral argument, the Department

13

clarified that the rule is aimed at defining the persons to whom an insured may make an assignment, and explained that the rule permits but does not require the assignment of duties as well as benefits. That is a reasonable construction of the regulation.

More importantly, the Department states that the rule does not "address[] the scope of discovery in a PIP arbitration" and is not intended to circumvent the holding in Selective Insurance Co. of America v. Hudson East Pain Management, 210 N.J. 597, 607 (2012). According to the Department, a provider's "duties" would consist of obligations already imposed by law on health care providers in PIP cases, such as providing patient medical records to document the medical services for which reimbursement is being sought. See N.J.S.A. 39:6A-13(b); Coalition II, supra, 348 N.J. Super. at 318-19. The Department agreed that the rule would not permit the kind of wide-ranging, burdensome discovery of which the Court clearly disapproved in Selective, supra, 210 N.J. at 609. That position is also consistent with the Department's responses to comments when it adopted the rule. See 44 N.J.R. 2685-86. We agree that, as thus narrowly construed, the rule passes muster. Appellants' arguments on that point warrant no further discussion. R. 2:11-3(e)(1)(E).

An additional issue, which appellants have raised, is that the new regulations will result in accident victims being unable to obtain medical care. They claim, for example, that patients

14

will be unable to find treatment providers, will be prohibited from obtaining the types of medical care they need, or will incur greater expense due to obtaining treatment at hospitals rather than free-standing medical facilities. It is undisputed that there is, in this record, no legally competent evidence to support those claims.

However, the Department has committed to monitoring the implementation of the new regulations to determine whether accident victims are experiencing any such negative effects. That is a critically important commitment, because one of the central purposes of the PIP statute is to ensure that accident victims receive prompt medical care. See Selective, supra, 210 N.J. at 609. The Department has represented to this court that, as part of its monitoring process, it will accept and consider evidence submitted by appellants on those issues. The Department has also represented that appellants have the option of petitioning the Department for rulemaking, seeking rule amendments that would address any such negative impacts if they occur. In that process, they would also have the opportunity to create an evidentiary record to support their claims. We expect the Department to honor those commitments, and we decline to further address appellants' arguments on this point due to the lack of an evidentiary record.

Next we address appellants' arguments concerning the way the Department calculated reimbursement rates. In a nutshell, we find no basis to conclude that the Department's methodology was arbitrary or capricious. The Department's responses to comments are persuasive to us in explaining its methodology. Moreover, the competing expert reports submitted on behalf of appellants and the insurance industry demonstrate that well-qualified experts can disagree on the appropriate methods to calculate the rates. To cite one example, appellants' expert opined that the Department should have relied on physicians' billed fees. However, the insurance companies' expert cogently explained that physicians' billed fees, as opposed to the fees they actually accept in payment, are often inflated and therefore are an unreliable foundation on which to set PIP reimbursement rates. We have repeatedly upheld the use of paid fees, versus billed fees, in setting the PIP reimbursement rates, and the issue requires no further discussion. See In re Adoption of N.J.A.C. 11:3-29, supra, 410 N.J. Super. at 38-39; Coalition III, supra, 358 N.J. Super. at 126-29.

In setting the rates, the Department used a combination of sources, including the Resource Based Relative Value System (RBRVS) used to set federal Medicare reimbursement rates, and a proprietary database obtained from the Fair Health organization, an entity whose data appellants' expert, Mr. Weiss, actually

16

lauded as reliable.[7]  See 44 N.J.R. 2690-91, 2703.  We previously approved the Department's consideration of the federal Medicare RBRVS in setting reimbursement rates.  In re Adoption of N.J.A.C. 11:3-29, supra, 410 N.J. Super. at 32-36.  Moreover, the PIP statute specifically authorizes the Department to use proprietary databases in setting rates.  N.J.S.A. 39:6A-4.6(a); In re Adoption of N.J.A.C. 11:3-29, supra, 410 N.J. Super. at 15.

Absent a clear showing of arbitrariness, which is not present here, the Department, not this court, is authorized to choose the rate-setting methods.  See Coalition I, supra, 323 N.J. Super. at 269.  We find no basis to disturb the Department's chosen methodology or the resulting reimbursement rates.

Appellants also challenge the Department's regulation denying reimbursement for certain procedures performed in ambulatory surgery centers (ASCs), while permitting reimbursement for those procedures if performed in a hospital outpatient surgery facility.  N.J.A.C. 11:3-29.4(e)(3).  The Department relied on federal Medicare rules, which deny reimbursement based on the federal government's conclusion that

---

[7]Consistent with our opinion in In re Adoption of N.J.A.C. 11:3-29, supra, 410 N.J. Super. at 43, the Department did not use the Ingenix database in formulating the current regulations.

performing those procedures in ASCs is unsafe for patients. 44 N.J.R. 383-84, 394 (Feb. 21, 2012). We cannot conclude that the Department's decision to follow Medicare's policy was arbitrary. Nor, as previously noted, is there legally competent evidence in this record that the regulation will have a negative impact on patients.[8] Contrary to appellants' contentions, the Department has authority to limit individual PIP beneficiaries' choices in selecting medical providers, where those limits are justified "within the broad regulatory authority the Legislature has granted" to the agency. Coalition II, supra, 348 N.J. Super. at 309; see also Coalition I, supra, 323 N.J. Super. at 236-39.

We likewise find nothing arbitrary in the Department's decision to include acupuncture services in the schedule of treatment codes subject to a daily maximum fee allowed. As we have previously noted, In re Adoption of N.J.A.C. 11:3-29, supra, 410 N.J. Super. at 15, the PIP statute specifically authorizes that approach for bundled services:

_____

[8] We note that after virtually every major amendment to the regulations, appellants have warned of dire consequences for accident victims, whom they allege would be stripped of access to medical treatment by virtue of regulatory restrictions. Yet, the reported opinions do not reflect that they have documented the occurrence of those consequences. See In re Adoption of N.J.A.C. 11:3-29, supra, 410 N.J. Super. at 26 n.4 (noting that appellants could file "as-applied" challenges to the regulations "as experience with the new rates develops"); Coalition III, supra, 358 N.J. Super. at 135 (concluding that "appellants' dire predictions are purely speculative and unsupported by any evidence").

18

> The fee schedule may . . . establish the use of a single fee, rather than an unbundled fee, for a group of services if those services are commonly provided together. In the case of multiple procedures performed simultaneously, the fee schedule and regulations promulgated pursuant thereto may also provide for a standard fee for a primary procedure, and proportional reductions in the cost of the additional procedures.
>
> [N.J.S.A. 39:6A-4.6(b).]

The Department adopted that approach based on its finding that acupuncture is commonly performed in chiropractic offices and physical therapy facilities and is provided together with other procedures whose codes are on the daily maximum list. See 43 N.J.R. 1646 (Aug. 1, 2011); 44 N.J.R. 2705-07. We find nothing arbitrary in limiting the fees that will be paid for bundled services provided to the same patient on the same day. See Coalition III, supra, 358 N.J. Super. at 132-33. Moreover, as the Department also notes, the regulation allows an exception when "the severity or extent of the injury is such that extraordinary time and effort is needed for effective treatment." N.J.A.C. 11:3-29.4(m). Examples include severe brain injury and non-soft-tissue injuries to more than one part of the body. Ibid. Furthermore, if a patient visits a stand-alone acupuncture office and only receives acupuncture services on a particular day, nothing in the regulation prevents the

acupuncturist from being paid the full daily maximum fee. Ibid.; 44 N.J.R. 2706.

Subject to the Department's commitment to monitor the effect of the regulation, we find nothing unauthorized or improper in the regulation permitting DRP organizations to adopt rules providing for "on-the-papers" PIP arbitrations where all parties consent or where there is no further medical treatment at issue and the amount in controversy is $1000 or less. N.J.A.C. 11:3-5.2 (defining "on-the-papers proceeding"); see 43 N.J.R. 1642, 1650-51. There appears to be no dispute that few DRP hearings currently involve oral testimony. See 44 N.J.R. 2688. Further, the enabling statute, N.J.S.A. 39:6A-5.1, does not, on its face, preclude arbitration decisions rendered on the basis of an exchange of paper submissions, and conducting paper reviews in cases involving de minimis claims is certainly consistent with the statute's overall purpose to reduce costs and expedite the decision of claims. Nonetheless, we expect the Department, as part of its monitoring function noted earlier, to consider information from appellants and the DRP organization as to whether on-the-papers proceedings are being routinely held in

cases where there are disputed issues of material fact which testimony would ordinarily be required to resolve.[9]

We reject appellants' argument that the Department unreasonably defined "standard professional treatment protocols" as "evidence-based clinical guidelines/practice/treatment published in peer-reviewed journals."  See N.J.A.C. 11:3-4.2. To put the issue in context, to be reimbursable, treatment rendered to a patient must be medically necessary.  One factor in determining medical necessity is whether a treatment is "the most appropriate level of service that is in accordance with . . . standard professional treatment protocols."  N.J.A.C. 11:3-4.2 (defining "medical necessity").  This language tracks the statutory definition of "medically necessary," N.J.S.A. 39:6A-2(m).  Subsection (m) also authorizes the Department to determine the standard professional treatment protocols that it will recognize or designate.  Ibid.

_____

[9] Appellants speculate that a decision resulting from a mandatory on-the-papers arbitration might have a collateral estoppel effect in "subsequent proceedings which are of greater magnitude."  The issue is not ripe for decision here.  However, we note that appellants rely on a case in which the plaintiff cited "no limitation on her opportunity to present evidence or otherwise to be heard in the PIP arbitration," Habick v. Liberty Mut. Fire Ins. Co., 320 N.J. Super. 244, 262 (App. Div.), certif. denied, 161 N.J. 149 (1999), and a case in which the parties voluntarily submitted their issues for decision on the papers.  Kozlowski v. Smith, 193 N.J. Super. 672, 674-75 (App. Div. 1984).

The Department cogently explained that providing a regulatory definition of "standard professional treatment protocols" was a response to prior attempts by some providers to manipulate the PIP system, by arranging for their colleagues to publish articles in non-peer-reviewed journals, advocating the use of certain procedures based only on anecdotal evidence. In turn, the providers would then cite those articles in support of their applications for reimbursement for those procedures.[10] See 43 N.J.R. 1640. We find no abuse of the Department's discretion in adopting its definition of a standard professional treatment protocol.

Appellants' reliance on Thermographic Diagnostics, Inc. v. Allstate Insurance Co., 125 N.J. 491 (1991), is misplaced. In addressing new treatments for which reimbursement is sought under the PIP statute, the Court stated: "The use of the treatment, procedure, or service must be warranted by the circumstances and its medical value must be verified by credible and reliable evidence." Id. at 512. We find that the challenged regulation is not facially inconsistent with that standard.

---

[10] As the insurance intervenors note, providers have an economic incentive to use new medical tests or treatments that are not covered by the Department's existing CPT codes, which set dollar limits for the coded procedures.

Appellants' remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1038-12