**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2136-17T4

IN THE MATTER OF THE
APPLICATION OF ALAN &
SCOTT SHEPPARD
(SOUTH JERSEY MOTORCARS, LLC).

_____

Submitted December 5, 2018 – Decided January 3, 2019

Before Judges Koblitz and Mayer.

On appeal from the New Jersey Motor Vehicle Commission.

Schiller, Pittenger, & Galvin, PC, attorneys for appellant (Thomas G. Russomano, of counsel and on the brief; Jay B. Bohn, on the brief).

Gurbir S. Grewal, Attorney General of New Jersey, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Jennifer R. Jaremback, Deputy Attorney General, on the brief).

PER CURIAM

South Jersey Motorcars, LLC, Alan Sheppard, and Scott Sheppard

(collectively SJM) appeal from a December 21, 2017 final decision of the Motor

Vehicle Commission (MVC), denying an application for a used motor vehicle dealer license (license). The MVC denied the license because SJM's proposed location for the dealership did not satisfy the requirements for a suitable place of business by complying with the firewall regulation in accordance with N.J.A.C. 13:21-15.4(d). We affirm.

The facility where SJM proposed to operate a dealership was located in an industrial complex. The building to be occupied by SJM was approximately 150 feet by 300 feet. The larger building was divided into nineteen office units, with each unit separated from the adjoining units. SJM was to occupy Unit 17, which was bordered by Units 16 and 18 on each side and by Unit 10 in the rear.

A field inspection by the MVC revealed SJM's dealership would occupy a single unit within the complex and would be adjacent to three different businesses, all unrelated to SJM.

On May 19, 2015, SJM applied for a license, indicating the location for SMJ's dealership was Type "C." A Type "C" facility is located in a building that contains one or more business entities, where a New Jersey motor vehicle dealer did not have a valid license as of March 6, 2006. A Type "C" building requires firewalls between dealerships and other businesses in the same building.

A-2136-17T4

The MVC denied the license because SJM's proposed location failed to meet firewall regulation pursuant to N.J.A.C. 13:21-15.4(d). SJM requested a hearing, contesting the MVC's denial of the license. The MVC denied SJM's request.

On December 21, 2015, SJM filed a second license application for the same unit in the same building complex. This time, SJM claimed its location was a Type "A" building[1] and not a Type "C" building, contrary to SJM's earlier license application. SJM argued the MVC regulation requiring a firewall was inapplicable because the location had its own tax lot, no other businesses operated out of the same space, and no licensed dealerships adjoined the proposed location.

The MVC denied the second license application due to the lack of firewalls between SJM's facility and the other businesses.

SJM requested a hearing on the denial of its second license application. The MVC transmitted the matter to the Office of Administrative Law (OAL) as a contested case for review by an administrative law judge (ALJ).

_____

[1] A Type "A" facility is "[l]ocated in a building where there is a single business or multiple business with a single common identity of ownership." Firewalls are not required for Type A facilities.

3

Before the OAL, SJM filed a motion for summary decision, which the MVC opposed. The ALJ determined the issue was "whether the MVC properly exercised its power in failing to issue a location type 'A' Used Motor Dealer License under N.J.A.C. 13:21-15.4(d) to [SJM] based upon the failure to provide an appropriate certification regarding a firewall . . . ."

N.J.A.C. 13:21-15.4(d) provides:

> A proposed place of business will not be considered suitable for approval if there already exist one or more licenses issued for, or other business entities present at, the same premises . . . . A proposed place of business is deemed to occupy the same premises as another dealership if the two facilities: (1) [a]re not completely separated by exterior walls or a firewall . . . .

The MVC regulation does not define the word "premises." Consequently, the ALJ concluded he had to define the term to decide SJM's motion. SJM argued "premises" applied only to the deeded property, identified as Unit 17, not the entire building. The MVC maintained the term "premises" referred to the entire building. The ALJ determined "premises" applied to the part of the building which is deeded to an applicant, not the entire building, and recommended the issuance of a license to SJM.

The MVC filed exceptions to the ALJ's recommendation. SJM responded to the MVC's exceptions. The matter was then referred to the agency for a final decision.

The MVC's Chief Administrator (Administrator) denied SJM's license. The Administrator rejected the ALJ's definition of "premises," determining the issue was whether SJM's proposed business location occupied the same premises as other businesses. The Administrator concluded the agency's reading of the regulation was consistent with the regulation's plain language, the MVC's historic interpretation of the regulation, and the deference accorded to the agency when interpreting or enforcing a regulation within the agency's purview.

The MVC enforces the Motor Vehicle Certificate of Ownership Law (MVCOL), N.J.S.A. 39:10-1 to -37. The MVCOL "regulate[s] and control[s] title to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles . . . ." N.J.S.A. 39:10-3. In promulgating N.J.A.C. 13:21-15.4, the MVC emphasized the need to protect consumers from dishonest behavior in the sale of motor vehicles. The MVC's regulation requiring firewalls was enacted to eliminate illegitimate motor vehicle businesses operating out of non-conforming buildings.

A-2136-17T4

The Administrator explained that the 2005 changes to N.J.A.C. 13:21-15.4 "clarif[y] the requirement that each dealership be separated from every other dealership and every other business entity unless there is a complete identity of ownership of the two businesses . . . ." 37 N.J.R. 1002 (April 4, 2005). According to the Administrator, the amendment to the regulation "reflect[s] the ongoing efforts of the MVC to ensure the integrity of dealer facilities in the face of abuses reported to the [MVC]." The Administrator considered the regulation based on the "totality of the context of the regulatory and statutory regime[,]" and concluded "a firewall must separate offices that are split in a shared building that is separated into individual units."

The Administrator found reading the regulation to omit the requirement for firewalls between different businesses would defeat the regulation's intended purpose of protecting the public against fraud and illegitimate activities associated with the sale of motor vehicles. The Administrator concluded that the ALJ's interpretation of the term

> "same premises" would apply only if Unit 17 itself were subdivided in two. This would lead to the untenable and ridiculous situation whereby Unit 17 would be divided by a firewall, without requiring that a firewall be constructed between each half of Unit 17 and the other units in the multi-unit facility. Such a reading would not make sense in the overall context of the regulation.

A-2136-17T4

SJM appealed the license denial, arguing the Administrator erred by (1) improperly interpreting the word "premises" as used in N.J.A.C. 13:21-15.4(d) and (2) requiring firewalls pursuant to N.J.A.C. 13:21-15.4(d) because the regulation usurps the power of the Commissioner of the Department of Community Affairs (DCA) and its authority regarding building requirements.

Review of an administrative agency final determination is limited. In re Carter, 191 N.J. 474, 482 (2007). "Judicial review of agency regulations begins with a presumption that the regulations are both 'valid and reasonable.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012) (quoting N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008)). "That deference 'stems from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters . . . .'" N.J. Healthcare Coal. v. N.J. Dep't of Banking & Ins., 440 N.J. Super. 129, 135 (App. Div. 2015) (quoting N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222 (1999)). In light of its expertise, we "give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004) (citing In re Distrib'n of Liquid Assets, 168 N.J. 1, 10-11 (2001)).

A-2136-17T4

The agency's decision will be affirmed unless the court "conclude[s] that the decision of the administrative agency is arbitrary, capricious, or unreasonable, or is not supported by substantial credible evidence in the record as a whole." In re Adoption of Amendments to Ne., Upper Raritan, Sussex Cty., 435 N.J. Super. 571, 582 (App. Div. 2014) (quoting J.D. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 521 (App. Div. 2000)).  We "accord a 'strong presumption of reasonableness' to an agency's 'exercise of statutorily delegated responsibilities.'"  Ibid. (quoting City of Newark v. Nat. Res. Council, 82 N.J. 530, 539 (1980)).  "The burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the [party] challenging the administrative action."  In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

A regulation should be read in accordance with its plain meaning and "in a manner that makes sense when read in the context of the entire regulation." In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013) (quoting Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J. Super. 1, 5 (App Div. 1985)).  N.J.A.C. 13:21-15.4 governs an "established place of business" for motor vehicle dealers and addresses how "books, records,

and files necessary to conduct business" shall be maintained. N.J.A.C. 13:21-15.4(d) states,

> [a] proposed place of business will not be considered suitable for approval if there already exist one or more licenses issued for, or other business entities present at, the same premises . . . . A proposed place of business is deemed to occupy the same premises as another dealership if the two facilities: (1) [a]re not completely separated by exterior walls or a firewall . . . .

In 2005, the MVC added "other business entities" to the regulation, clarifying that dealerships must be separated by a "permanent wall," such as a firewall, from other dealerships and businesses. N.J.A.C. 13:21-15.4(d); see also 37 N.J.R. 1002(a) (April 4, 2005). This amendment was intended to improve document security related to motor vehicle transactions and to protect consumers from dishonest business practices consistent with the MVC's regulatory authority. 37 N.J.R. 1003 (April 4, 2005).

SJM argues the MVC's interpretation of "premises" as used in N.J.A.C. 13:21-15.4(d) is unreasonable because "premises," as used in N.J.A.C. 13:21-15.2(i), means a deeded property with a specific tax lot, not an entire building. Because SJM submitted an individual deed for Unit 17, and Unit 17 has its own tax lot, SJM contends the proposed location is its own premises and does not require a firewall.

SJM's proposed place of business is a unit in a business complex with eighteen other businesses and is not separated from those businesses by firewalls. SJM ignores the 2005 amendment to the regulation that added language requiring dealerships to be separated from not only other dealerships, but also other non-dealership business entities. The purpose of the regulation, to protect the security of documentation regarding motor vehicle transactions and prevent fraudulent dealings, would be rendered meaningless if read to require a firewall only between adjoining dealerships and no other business entities. Thus, SJM's interpretation of "premises" fails to "make[] sense when read in the context of the entire regulation."

SJM also argues N.J.A.C. 13:21-15.4(d) is invalid because the firewall requirement creates a new building code without approval from the DCA. SJM contends the DCA has exclusive authority governing building code requirements under the Uniform Construction Code (UCC) and the MVC regulation usurps the DCA's authority.

We reject the argument that the firewall requirement is inconsistent with the UCC and usurps the authority of the DCA related to building construction. N.J.A.C. 13:21-15.4(d) requires a dealership be separated by firewalls built in conformity with the UCC. The DCA promulgates building codes for the

protection of people and businesses, regardless of the industry. N.J.S.A. 52:27D-123 to -123.1. The MVC regulates the motor vehicle industry, including requirements for suitable places of business. N.J.S.A. 39:10-3, -19. The MVC has determined a suitable place of business must be separated from other businesses by exterior walls or firewalls built according to the UCC. N.J.A.C. 13:21-15.4(d). Because the MVC chose an existing firewall regulation as a proper wall separating dealerships from other businesses, the MVC acted within its statutory authority, consistent with the UCC. Thus, the MVC did not infringe on the regulatory authority of the DCA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2136-17T4