175 N.J. Super. 367 (1980)
418 A.2d 1330
RADIOLOGICAL SOCIETY OF NEW JERSEY, A CHAPTER OF THE AMERICAN COLLEGE OF RADIOLOGY, A NON-PROFIT CORPORATION; RAYMOND F. HEALEY, M.D.; CARL KNITZER, M.D.; BARRY I. LOIGMAN, M.D.; CHARLES C. ROYER, M.D.; KENNETH JEWEL, M.D.; JOHN J. THOMPSON, M.D.; JOHN V. REARDON, M.D.; THOMAS F. MCGUIRE, M.D.; PHILIP SORABELLA, M.D.; HERBERT GERSTEIN, M.D.; JOHN D. MAUN, M.D.; HERBERT FRIEDMAN, M.D.; LLOYD SPINDELL, M.D.; MICHAEL OCH, M.D.; NORMAN MAGID, M.D.; LEONARD BARRIS, M.D.; U.R. KRISHMAN, M.D.; ARMAND F. LEONE, M.D.; RITA G. LEONE, M.D.; MONTCLAIR RADIOLOGY ASSOCIATES, A PROFESSIONAL CORPORATION OF THE STATE OF NEW JERSEY; RADIOLOGY ASSOCIATES OF RIDGEWOOD, A PROFESSIONAL CORPORATION OF THE STATE OF NEW JERSEY; HERBERT FRIEDMAN, M.D., P.A., A PROFESSIONAL CORPORATION OF THE STATE OF NEW JERSEY; NBIH RADIOLOGISTS, A PROFESSIONAL CORPORATION OF THE STATE OF NEW JERSEY; AND PREAKNESS RADIOLOGICAL ASSOCIATION, A PROFESSIONAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
JAMES J. SHEERAN, COMMISSIONER, DEPARTMENT OF INSURANCE OF THE STATE OF NEW JERSEY; HOSPITAL SERVICE PLAN OF NEW JERSEY, A NEW JERSEY HOSPITAL SERVICE CORPORATION; AND MEDICAL-SURGICAL PLAN OF NEW JERSEY, A NEW JERSEY MEDICAL SERVICE CORPORATION, DEFENDANTS-RESPONDENTS, AND HOSPITAL SERVICE PLAN OF NEW JERSEY, DEFENDANT-RESPONDENT AND THIRD-PARTY PLAINTIFF,
v.
NEW JERSEY HOSPITAL ASSOCIATION; MOUNTAINSIDE HOSPITAL; VALLEY HOSPITAL; MONTCLAIR COMMUNITY HOSPITAL; NEWARK BETH ISRAEL MEDICAL CENTER, AND GREATER PATERSON GENERAL HOSPITAL ASSOCIATION, THIRD-PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 15, 1980.
Decided July 17, 1980.
*370 Before Judges MATTHEWS, ARD and POLOW.
Burton L. Eichler argued the cause for appellants (Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer, attorneys; Lance A. Posner and H. Neil Broder on the brief).
Peter D. Pizzuto, Deputy Attorney General, argued the cause for respondent Commissioner of Insurance (John J. Degnan, Attorney General, attorney; Stephen Skillman, Assistant Attorney General, of counsel).
William R. Vanderbilt argued the cause for respondent Medical-Surgical Plan of New Jersey (Vanderbilt & Siegel, attorneys).
Richard L. Amster argued the cause for respondent Hospital Service Plan of New Jersey (Amster & Levin, attorneys).
Edward A. Zung, Jr., argued the cause for respondents hospitals (Riker, Danzig, Scherer & Hyland, attorneys for Valley Hospital; Bernice B. Stein, on the brief).
Booth, Bate, Hagoort, Keith & Grieco, attorneys for Mountainside Hospital (F. Eugene Keith, Jr., on the brief).
*371 Charles R.L. Hemmersley, attorney for Montclair Community Hospital.
Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, attorneys for Newark Beth Israel Medical Center.
Morrison & Griggs, attorneys for Greater Paterson General Hospital Association (Donald W. de Cordova, on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
On October 30, 1975 plaintiffs Radiological Society of New Jersey, five professional corporations who deliver radiological services, and 19 licensed physicians who specialize in the field of radiology (radiologists) instituted this action in the Chancery Division against the Commissioner of the Department of Insurance (Commissioner), the Hospital Service Plan of New Jersey (Blue Cross) and the Medical-Surgical Plan of New Jersey (Blue Shield). The complaint sought a declaratory judgment recognizing in-hospital radiological services to be within the scope of Blue Shield coverage rather than Blue Cross, and the concomitant right of radiologists to submit bills directly to subscribers for the amount not otherwise reimbursed by Blue Cross. In addition, plaintiffs requested injunctive relief.
The Commissioner filed a counterclaim against the radiologists seeking a declaratory judgment recognizing in-hospital radiological services to be within the scope of Blue Cross coverage, an injunction restraining plaintiffs from submitting balance-due bills to Blue Cross subscribers, an accounting of monies collected therefrom and an award of damages.
By way of third-party complaint, Blue Cross impleaded the New Jersey Hospital Association and five hospitals (hospitals) in which plaintiffs have rendered in-hospital radiological services and have engaged in the practice of balance-due billing. The third-party plaintiff seeks indemnification from the hospitals for any monies it may be obligated to pay the radiologists in connection with this action. Three hospitals filed a crossclaim for indemnification against plaintiffs who rendered radiological services in their hospital.
*372 The Chancery Division judge consolidated the case with Cohen v. Hospital Service Plan of New Jersey (subscriber action against Blue Cross asserting liability for the direct billing of in-hospital radiology services) and Cohen v. Healey (subscriber action contesting the validity of balance-due billing). The Commissioner thereafter moved for an order transferring the case to the Appellate Division on the ground that it involved the review of actions of a state administrative agency or officer. Following a hearing on the motion the Chancery Division judge ordered the case transferred to this court, and placed the two remaining consolidated actions on the inactive list until we decided this case.
Plaintiffs are physicians licensed to practice medicine and surgery in this State who engage in the specialized practice of radiology. Radiology involves the application of x-rays, after determining the anatomical area to be exposed and the quantum of exposure, for the purpose of rendering a medical diagnosis.
Traditionally, radiologists were compensated for rendering in-hospital radiological services as salaried employees or on a percentage of the hospital's gross billings. These expenses were included in the total cost picture by Blue Cross and thus gave complete coverage for radiology services. With the advent of Medicare in 1966, many radiologists terminated their arrangements with the hospitals.
Medicare separated radiology services into a professional and technical[1] component, allowing radiologists to bill separately hospital in-patients for the former services. Thus many radiologists commenced billing patients directly for their professional services rendered on a fee-for-service basis.
The adoption of fee-for-service billing presented a problem for Blue Cross subscribers. Since Blue Cross could not directly reimburse physicians for services rendered and Blue Shield subscription certificates specifically excluded payment for in-patient *373 radiological services, the subscribers would be liable for the bills submitted by plaintiffs. A procedure was developed by Blue Cross and the New Jersey Hospital Association (NJHA) whereunder a hospital could agree to pay the radiologists' bills for professional services rendered Blue Cross patients. In return, Blue Cross would reimburse the hospital for the payments made on behalf of its subscribers provided they did not exceed the rate of reimbursement in effect in 1966 when the hospitals directly compensated radiologists. The hospitals were given the right to have the limitation reviewed by the Council on Hospital Reimbursement (council) if they suffered a hardship in a given year.
Although plaintiffs did not enter into a formal written agreement with the hospitals, they nevertheless submitted their bills for services rendered Blue Cross subscribers to their hospitals and received payment from them. In turn, the hospitals submitted claims to Blue Cross for reimbursement of the amounts paid radiologists as part of the Blue Cross per diem rate. According to plaintiffs, they refrained from billing Blue Cross subscribers directly as an accommodation to the hospital and Blue Cross, so that the subscribers would not be denied coverage in any amount. It is claimed that this reimbursement arrangement was only intended to be implemented on an interim basis until the payment of radiologists' fees was shifted from Blue Cross to Blue Shield.
In 1966 plaintiff Radiological Society, the NJHA, Blue Cross, Blue Shield and the Commissioner engaged in meetings which concluded that representatives of the Society would meet with the Blue Shield Fee Committee in 1967 to work out the details of the proposed transfer. Throughout the following years there were many meetings and correspondence between the parties, the last meeting was held on July 1, 1974, but the Commissioner failed to respond to the radiologists' continued requests.
Meanwhile, plaintiffs were not satisfied with the rate of reimbursement, frozen at 1966 levels, they were receiving from Blue Cross via the hospital. Many radiologists under contract with hospitals were being compensated at a higher level than the amounts approved by the counsel for radiologists who billed on a fee-for-service basis. The existent rate and budget review *374 mechanism proved ineffective to rectify the disparity. Consequently, plaintiffs began to bill Blue Cross subscribers directly for the difference between the reasonable value of their professional services and the amount paid by Blue Cross in 1972 and 1974. Presently, out of 128 hospitals with which Blue Cross has contracts, balance-due billing occurs in only seven of them.
Blue Cross immediately informed the Commissioner that plaintiffs did not consider the reimbursements as payment in full and were thus engaging in the practice of balance-due billing. The Commissioner was requested to do something to resolve the problem. However, it was not until August 7, 1975 that the Commissioner responded. In a letter addressed to Blue Cross he requested the plan to see to it that all hospitals demand that their radiologists stop billing Blue Cross subscribers for professional services not otherwise reimbursed. The Commissioner threatened the termination of their contracting hospital agreement if the hospitals did not comply. On August 7, 1975 the Commissioner issued a press release summarizing his position that the cost of radiology is covered entirely by Blue Cross payments to hospitals. As a result, many subscribers refused to pay the radiologists' balance-due bills.
Although Blue Cross subsequently requested a meeting of all the parties to resolve the problem, no definitive action has been taken. Consequently, the radiologists filed this action seeking a declaratory judgment setting forth their right to be included within the scope of Blue Shield coverage and the concomitant right to engage in balance-due billing.

I
Blue Cross is a nonprofit hospital service corporation organized for the purpose of establishing, maintaining and operating a hospital service plan. N.J.S.A. 17:48-1. A hospital service plan is defined as:
... a plan whereunder service benefit contracts are issued providing complete prepayment or postpayment of eligible health care services and supplies for a given period to persons covered under such contracts, and arrangements are made for payment for such health care services and supplies directly to the provider thereof, including but not limited to, health care facilities and other suppliers of health care services; ... Arrangements may be made for payment for such health care services and supplies directly to the ... subscribers under such contracts. [Emphasis supplied]
*375 The corporation is to be operated for the benefit of its subscribers with whom it has contracted to provide hospital services. N.J. Ass'n Ins. Agents v. Hospital Serv. Plan, 128 N.J. Super. 472, 476 (App.Div. 1974), rev'd on other grounds 68 N.J. 213 (1975). Thus, the basic philosophy of Blue Cross has always been that of constant progress toward the goal of complete protection against the unpredictable costs of hospital services for all the people of the community. Borland v. Bayonne Hospital, 122 N.J. Super. 387, 399 (Ch.Div. 1973), aff'd o.b. 136 N.J. Super. 60 (App. Div. 1975), aff'd 72 N.J. 152 (1977), cert. den. 434 U.S. 817, 98 S.Ct. 56, 54 L.Ed.2d 73 (1977). Consistent therewith, N.J.S.A. 17:48-1 requires a hospital service corporation to provide the public with a complete payment method for financing eligible health care services. By its terms, balance-due billing is prohibited by statute since reimbursements by Blue Cross constitute payment in full for services rendered.
Blue Shield is a nonprofit service corporation organized for the purpose of establishing, maintaining and operating a medical service plan. N.J.S.A. 17:48A-1; N.J. Ass'n Ins. Agents, above, 128 N.J. Super. at 477. A medical service plan is defined as:
... any plan ... whereby the expense of medical services to subscribers ... is paid in whole or in part by the corporation to participating physicians... A participating physician is any physician licensed to practice medicine and surgery ... who agrees in writing with the corporation to perform the medical services specified in the contracts issued by the corporation and at such rates of compensation as shall be determined by its board of trustees. [N.J.S.A. 17:48A-1; emphasis supplied]
Contrary to its hospital counterpart, Blue Shield recognizes the right of participating physicians to submit balance-due bills to subscribers, if their income exceeds a certain amount, for the portions of their fees not otherwise reimbursed by the plan since N.J.S.A. 17:48A-1 does not provide for "complete" payment for eligible services.
In their attempt to come within the scope of Blue Shield coverage, the radiologists contend that Blue Cross is not authorized to reimburse plaintiffs for their professional medical services rendered since they are physicians licensed to practice medicine and surgery who engage in the private practice of radiology.
*376 Although the Hospital Service Corporation Act does not define "health care services," the term is defined in the Health Care Facilities Planning Act, N.J.S.A. 26:2H-1 et seq., which was promulgated in the same chapter, L. 1971, c. 136, as an amendment to N.J.S.A. 17:48-1. "Health care service" means:
... the preadmission, outpatient, inpatient and postdischarge care provided in or by a health care facility, and such other items or services as are necessary for such care, which are provided by or under the supervision of a physician for the purpose of health maintenance organizations, diagnosis or treatment of human disease, pain, injury, disability, deformity or physical condition, including, but not limited to, nursing service, home care nursing and other paramedical service, ambulance service, service provided by an intern, resident in training or physician whose compensation is provided through agreement with a health care facility, laboratory service, medical social service, drugs, biologicals, supplies, appliances, equipment, bed and board, but excluding services provided by a physician in his private practice. [N.J.S.A. 26:2H-2 b]
Plaintiffs believe they do not deliver "health care services" since they render in-patient radiological treatment to Blue Cross subscribers as part of their private practice. Unlike before, the radiologists do not receive a salary from the hospital or a percentage of the hospital's gross billings as compensation. Instead, they directly bill all patients, Blue Cross and non-Blue Cross subscribers alike, on a fee-for-service basis. Their compensation depends on the number of patients they treat and the amount of money collected from their patients.
Defendants would not dispute plaintiffs' construction of N.J.S.A. 26:2H-2 b if they did not receive payment for radiological services rendered Blue Cross subscribers from Blue Cross through the hospital. Included within the definition of "health care services" are services provided by "an intern, resident in training or physician whose compensation is provided through agreement with a health care facility." Although no formal written agreement was ever entered into between the radiologists and the hospitals, plaintiffs have nevertheless continuously presented bills nominally addressed to Blue Cross subscribers to the hospitals for payment and have, in fact, received payment for their professional radiological services rendered. Unless a requirement exists, a contract need not be expressed in writing so long as the parties have mutually agreed to do something which they previously did not have an obligation to do. Silverstein v. Dohoney, 32 N.J. Super. 357, 361 (App.Div. 1954), aff'd sub nom. Silverstein v. Keane, 19 N.J. 1 (1955). It is irrelevant *377 that the radiologists submitted bills to the hospital for payment on an interim basis since the fact remains that plaintiffs have engaged in this billing procedure for over ten years.
Plaintiffs' argument that the inclusion of "interns" and "residents in training" before "physicians whose compensation is provided through agreement with a health care facility" expresses an intent to limit the type of compensation agreements to receiving a salary or percentage of the hospital's gross billings, we find to be without merit. Interns and residents in training were separately stated not because they were salaried hospital employees but because they are novice physicians who are in the process of gaining experience. Plaintiffs deliver "health care services" within the meaning of N.J.S.A. 17:48-1 by virtue of their accepting payment from hospitals for services rendered Blue Cross subscribers.
The radiologists interpret N.J.S.A. 17:48-1.7 to exclude the "services of persons licensed to practice medicine or surgery" from the scope of Blue Cross. Plaintiffs ignore the fact that the statute expands the authority of hospital service corporations to provide service benefits rather than restricting what it was already permitted to do.
Any hospital service corporation ..., in addition to other powers conferred upon it, shall be authorized and empowered to include in its contracts benefits not only for hospital services but also benefits for such other similar health care services and supplies or health care services or supplies other than the services of persons licensed to practice medicine or surgery as are approved for such inclusion by the Commissioner of ... Insurance. [Emphasis supplied]
When originally enacted in 1966, N.J.S.A. 17:48-1.7 conferred additional powers upon Blue Cross to include in its contracts benefits for "other related health care services" when agreed upon by an employer and a union. L. 1966, c. 125, § 1. In 1970, the statute was amended to permit Blue Cross to provide coverage for health care services similar to hospital services for non-group and group subscribers. L. 1970, c. 112, § 1. However, this expansion was not unlimited-the Legislature excluded the "services of persons licensed to practice medicine or surgery." Blue Cross was already permitted to provide benefits for hospital services, N.J.S.A. 17:48-1.7, as authorized by N.J.S.A. 17:48-1. *378 The limitation applies only to coverage for health care services beyond those empowered to Blue Cross under its original grant of authority. Any doubt was laid to rest by the subsequent adoption of N.J.S.A. 26:2H-2 b which explicitly included the services of physicians "whose compensation is provided through agreement with a health care facility" within the scope of a hospital service corporation's authority to offer service benefits. Thus radiologists are not excluded from the scope of Blue Cross coverage by virtue of being licensed to practice medicine or surgery.
Plaintiffs contend that even if it is concluded that in-patient radiological treatment is included within the scope of Blue Cross coverage, the subscription certificates preclude them from receiving service benefits. The subscription certificate is a contract entered into between Blue Cross and its subscribers describing the rights and obligations of the parties.
Blue Cross is liable for the payment of hospital care and services rendered to an in-patient in an approved hospital. Subject to limitations and exclusions, hospital care and services shall include:
... [s]ervices by voluntary or paid hospital employees, by an intern or other physician in training in the hospital or by a contractor with the hospital for rendering eligible hospital services.
The plan is also liable for payment of diagnostic services, such as x-ray examinations when rendered by the hospital to an in-patient in the course of treatment. However, hospital benefits are not provided for
... [s]ervices of physicians (other than intern or other physician in training in the hospital) for rendering medical care ... if such physicians customarily bill patients directly for rendering such services and regardless of the existence or non-existence of any financial or contractual arrangement between such physicians and the hospital. [Emphasis supplied]
Plaintiffs contend that they customarily bill their patients directly for their professional services rendered when they engage in the practice of fee-for-service billing. It is undisputed that radiologists bill their non-Blue Cross patients in this manner. However, when plaintiffs administer in-hospital radiological service to Blue Cross subscribers, they submit their fee-for-service bills to the hospital for payment. The radiologists thus are billing patients indirectly rather than directly. It *379 is only after plaintiffs receive payment from Blue Cross through the hospital that they submit balance-due bills directly to their Blue Cross patients. Although the phrase "regardless of the existence of any financial or contractual arrangement between such physician and the hospital" could be construed to refer to the radiologists and hospital reimbursement agreement, that interpretation would circumvent the requirement of direct billing-it would transform an indirect billing procedure to a direct billing procedure. The phrase can be more consistently interpreted as referring to arrangements involving hospital privileges and staff physicians in which the subscriber does not personally choose his own radiologist.
Blue Cross has been providing benefits to its subscribers for x-ray examinations rendered in hospitals ever since its inception in 1938. The Commissioner has consistently approved subscription certificates containing such provisions. A long period of consistent construction by an administrative agency in the field of its expertise is entitled to be given great weight by the courts. Ferrante v. Foley, 49 N.J. 432, 439 (1967). Since the Legislature has not interfered with the Commissioner's interpretation of the Hospital Service Corporations Act, there has been an implied recognition that he has correctly expressed the legislative meaning. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 300 (1968).
It is clear that Blue Cross is authorized to provide service benefits for in-patient radiological services. This does not necessarily mean that Blue Cross has to provide the service benefits nor do radiologists have to accept reimbursements for covered services unless they have contracted to do so. However, the fact remains that plaintiffs have chosen to accept reimbursements from Blue Cross via hospitals for the radiological treatment given Blue Cross subscribers.
In order to satisfy its subscription certificates with subscribers, Blue Cross has entered into agreements with hospitals throughout the State under which eligible health care services are provided by hospitals to Blue Cross subscribers in *380 exchange for payment to such hospitals by Blue Cross at a per diem rate approved by the Commissioner. Under the subscription certificates and contracting hospital agreements, Blue Cross reimbursements to the hospitals constitute payment in full for eligible in-patient hospital services. Acceptance of benefits pursuant to these contracts imposes on the radiologists an obligation to refrain from balance-due billing Blue Cross subscribers.
Plaintiffs are not being denied the right to engage in the independent practice of radiology or the right to bill their patients for the reasonable value of their professional services rendered. They have voluntarily chosen not to exercise their rights by accepting payments from Blue Cross for the professional radiological services rendered Blue Cross subscribers while in-patients in participating hospitals. The radiologists have tried to obtain the best of both possible worlds. They want to receive the benefits of Blue Cross coverage and at the same time avoid the statutory and contractual requirements that acceptance of benefits shall constitute payment in full. To approve plaintiffs' practice of balance-due billing would be to circumvent the Commissioner's statutory authority to regulate the schedule of premiums, rates and payments paid by subscribers, hospitals and Blue Cross.

II
The radiologists claim that they should be included within the scope of Blue Shield coverage since they are physicians licensed to "practice medicine and surgery." N.J.S.A. 17:48A-1. They rely on the following definition of the phrase "the practice of medicine and surgery" in the Practice of Medicine and Surgery Act, N.J.S.A. 45:9-1 et seq., in support of their argument:
... the practice of any branch of medicine and/or surgery and any method of treatment of human ailment, disease, pain, injury, deformity, mental or physical condition, .... [N.J.S.A. 45:9-5.1]
Although it is undisputed that radiologists are licensed to practice medicine and surgery and do, in fact, provide medical services, that alone does not automatically qualify them for Blue *381 Shield coverage. The Legislature has not mandated Blue Shield to provide coverage for all services rendered by licensed physicians, no matter how the patients are billed. This can be inferred from the definition section of the Medical Service Corporations Act and other provisions which recognize the right not to provide coverage for every type of medical service.
... A subscriber is a person to whom a subscription certificate is issued by the corporation and which sets forth the kinds and extent of the medical services for which the corporation is liable to make payment and which constitutes the contract between the subscriber and the corporation ... A participating physician is any physician licensed to practice medicine and surgery ... who agrees in writing with the corporation to perform the medical services specified in the contracts issued by the corporation ... No subscriber ... shall be liable for any payment to any participating physician for medical services specified in the subscriber's certificate to be paid to the participating physician by the corporation. [N.J.S.A. 17:48A-1; emphasis supplied]
Every subscription certificate must state the nature of the medical services to be paid by Blue Shield and a detailed description of the types of services excepted or limited from coverage. N.J.S.A. 17:48A-6, 7.3. These exceptions and limitations must appear on the contract with the same prominence as the benefits to which they apply. N.J.S.A. 17:48A-7.
In recognition thereof, Blue Shield subscription certificates not only deny coverage for in-patient radiological services but also exclude, among other things, laboratory or pathological examinations rendered by pathologists who are licensed physicians, the making or interpreting of electro-cardiograms and other graphic studies, dental surgery and the services of hospital resident physicians. There also exist limitations placed on otherwise covered services such as the number of days of initial emergency medical services, in-hospital medical services, in-hospital consultation and in-hospital shock therapy service.
Notwithstanding these exclusions, Blue Shield has not totally ignored the services of radiologists. In a rider to its subscription certificate, Blue Shield extends benefits for radiological services rendered "elsewhere than in an approved hospital." Consequently, plaintiffs would be entitled to Blue Shield payments if they conducted their practice of radiology in their own private offices.
*382 If the Legislature had intended to mandate the inclusion of in-hospital radiological services within the scope of Blue Shield coverage, it would have done so in unmistakable terms. See N.J.S.A. 17:48A-7a, which prohibits any contract providing hospital or medical expense benefits from being issued, executed or renewed unless it provides benefits for expenses incurred in connection with the treatment of alcoholism when prescribed by a physician, regardless of whether the services are rendered in or outside a hospital. Other statutory provisions merely provide that where a given service is covered by the subscription certificate, benefits shall not be denied when it is performed by a chiropodist (N.J.S.A. 17:48A-26), bio-analytical laboratory (N.J.S.A. 17:48A-27), dentists (N.J.S.A. 17:48A-28), optometrists (N.J.S.A. 17:48A-29), psychologists (N.J.S.A. 17:48A-30), physical therapists (N.J.S.A. 17:48A-31) and chiropractors (N.J.S.A. 17:48A-32). At the present time Blue Shield does not have a contract or rider covering the services of optometrists, notwithstanding its power to extend coverage to them.
Since Blue Shield has seen fit not to include in-hospital radiological services within the scope of its coverage and is not statutorily required to do so, we cannot modify or make a new subscription certificate for the parties. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960).

III
Plaintiffs contend that the refusal of Blue Cross to provide coverage for in-hospital radiological services and the failure of the Commissioner to compel Blue Cross to do so violates the radiologists' constitutional right to equal treatment under the laws. The Fourteenth Amendment immunizes people from actions by the State which affirmatively and significantly impinge on "fundamental rights, so thought to be inherent in their nature rather than created by any constitution or other human work." King v. South Jersey Nat'l Bank, 66 N.J. 161, 174 (1974). However, the amendment does not erect a shield against private action no matter how wrong; instead, the Constitution gives states the freedom to deal with the problem.
*383 Only by sifting facts and weighing the peculiar circumstances can the non-obvious involvement of the State in private conduct be accorded its true significance. One suggested analysis focuses on whether the State has become so involved in the conduct of an otherwise private entity that its activities are also activities of the State and performed under their aegis without the private entity necessarily becoming either their instrumentality or their agent in a strict sense. Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959, 966 (4 Cir.1963), cert. den. 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964).
Blue Shield is statutorily authorized to enter into subscription certificates with their subscribers to deliver service benefits, provided it specifically states the nature of medical services included, excluded or limited from coverage. N.J.S.A. 17:48A-6. That contract must be filed with the Commissioner for approval. However, the form can only be disapproved if it is "contrary to law, ... oppressive or calculated to mislead the public." N.J.S.A. 17:48A-9. The Commissioner is not given the power to direct Blue Shield to include radiological services within its subscription certificates. Since its inception in 1938, Blue Shield has consistently excluded in-hospital radiological services and until recently also radiological treatment performed outside a hospital.
Plaintiffs point to N.J.S.A. 17:48A-7.8 to support their position that the Commissioner is involved in virtually every phase of Blue Shield's activities. While "all practices, rules and procedures of a medical service corporation" are subject to review and disapproval by the Commissioner at any time, this agency oversight is limited to "termination or refusal to renew coverage, modification of coverage or rates in the case of persons classified as left-group, selection of risks and underwriting classifications." Again, the statute does not authorize the Commissioner to compel Blue Shield to include radiological services within the scope of their coverage because he feels that their exclusion is "unjust, unfair or inequitable."
*384 The Commissioner has been given broad powers to "supervise" a medical service corporation so that its "condition or methods of operation are not such as would render its operations hazardous to the public or its subscribers." N.J.S.A. 17:48A-3; Group Health Ins. of N.J. v. Howell, 40 N.J. 436, 442 (1963). However, he has not been given the power to become so involved in Blue Shield's activities that he controls the way the plan operates. Discrimination, if it exists at all, by an otherwise private entity has never been held by the United States Supreme Court to be violative of the Equal Protection Clause only because it is subject to state regulation in any degree whatsoever. Moose Lodge v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). We do not find state action in this case such as would invoke the protective shield of the Equal Protection Clause.
The administrative action taken by Commissioner Sheeran herein is affirmed.
NOTES
[1] The technical component includes costs incurred by a hospital for office and laboratory space, use of equipment, film and other materials.