NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1211-15T3

CAPITAL HEALTH SYSTEM, INC.,
CENTRASTATE MEDICAL CENTER,
HOLY NAME MEDICAL CENTER, INC.,
THE COMMUNITY HOSPITAL GROUP,
INC., t/a JFK MEDICAL CENTER,
KENNEDY HEALTH, OUR LADY OF
LOURDES HEALTH CARE SERVICES,
INC., ST. FRANCIS MEDICAL
CENTER, INC., ST. LUKE'S WARREN
HOSPITAL, INC., TRINITAS REGIONAL
MEDICAL CENTER, VALLEY HEALTH
SYSTEM, and VIRTUA HEALTH, INC.,

> Plaintiffs-Appellants,

v.

NEW JERSEY DEPARTMENT OF
BANKING AND INSURANCE,

> Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 7, 2016**
>
> **APPELLATE DIVISION**

Argued May 25, 2016 — Decided June 7, 2016

Before Judges Alvarez, Accurso and Haas.

On appeal from the New Jersey Department of
Banking and Insurance.

Kerri Ann Law (Kramer Levin Naftalis &
Frankel, LLP) of the New York bar, admitted
pro hac vice, argued the cause for
appellants (Greenberg Dauber Epstein &
Tucker; Steven M. Goldman; Daniel Goldman
(Kramer Levin Naftalis & Frankel, LLP) of

the New York bar, admitted pro hac vice; and Ms. Law, attorneys; Michael H. Freeman, Steven Goldman, Daniel Goldman and Ms. Law, of counsel; Linda G. Harvey, of counsel and on the briefs).

Richard E. Wegryn, Jr., Deputy Attorney General, argued the cause for respondent Department of Banking and Insurance (Robert Lougy, Acting Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Mr. Wegryn, on the briefs).

Jeffrey S. Chiesa argued the cause for respondent Horizon Blue Cross Blue Shield of New Jersey (Chiesa Shahinian & Giantomasi, PC, attorneys; Mr. Chiesa, on the briefs).

Melinda Martinson, General Counsel, Medical Society of New Jersey and Edith M. Kallas, Joe R. Whatley, Jr., Ilze C. Thielmann (Whatley Kallas, LLP) attorneys for amicus curiae Medical Society of New Jersey (Ms. Martinson, of counsel and on the brief; Ms. Kallas, Mr. Whatley and Mr. Thielmann, on the brief).

Howard R. Rubin, Robert T. Smith and Eric T. Werlinger (Katten Muchin Rosenman, LLP) of the District of Columbia bar, admitted pro hac vice, and Scott A. Resnik (Katten Muchin Rosenman, LLP) attorneys for amicus curiae New Jersey Patient Care and Access Coalition (Mr. Rubin, Mr. Smith and Mr. Werlinger, of counsel; Mr. Resnik, of counsel and on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

Appellants, a group of ten New Jersey hospitals,[1] appeal from the September 18, 2015 final decision of the New Jersey Department of Banking and Insurance (the Department), approving Horizon Blue Cross Blue Shield of New Jersey's (Horizon's) application to establish the OMNIA Health Alliance (OMNIA) network. OMNIA is a health benefits plan that contains a two-tiered network of hospitals and physicians under which a member's cost-share (deductibles, co-insurance, and co-payments) are lower if the member elects to use a Tier 1 provider. Horizon designated appellants as Tier 2 hospitals under the OMNIA tiered plan.

Appellants argue that the Department acted arbitrarily, capriciously and unreasonably in approving the OMNIA network because: the hospital network did not comply with the statutory and regulatory geographic access and availability standards (time and distance standards) for network adequacy; the hospital network is contrary to the public interest; the Department

---

[1] The ten hospitals are Capital Health System, Inc., Centrastate Medical Center, Holy Name Medical Center, Inc., The Community Hospital Group, Inc., t/a JFK Medical Center, Kennedy Health, Our Lady of Lourdes Health Care Services, Inc., St. Francis Medical Center, Inc., Trinitas Regional Medical Center, Valley Health System, and Virtua Health, Inc. An eleventh hospital, St. Luke's Warren Hospital, Inc., withdrew its appeal on May 24, 2016.

failed to conduct a meaningful analysis of the hospital network; and the approval was not supported by substantial evidence.

After evaluating these contentions in light of the record and the applicable law, we affirm the Department's decision in all respects.

## I.

The Department is vested with the authority to administer and enforce the insurance laws of this State. N.J.S.A. 17:1-1. It has "a statutory obligation to protect the interests of New Jersey's insurance consumers and to regulate and oversee the operations of the insurance industry." N.J.S.A. 17:1C-19(a)(1); see Richardson v. Standard Guar. Ins. Co., 371 N.J. Super. 449, 464 (App. Div. 2004) (citing N.J.S.A. 17:1C-19(a)(1)); In re Markel Ins. Cos., 319 N.J. Super. 23, 29 (App. Div. 1999) (insurance companies subject to strict regulatory control of the Department).

Among other things, the Legislature has granted the Department the authority to regulate fully insured health benefit plans sold in commercial markets, including the OMNIA plan offered by Horizon, a health service corporation. N.J.S.A. 17:48E-44. In accord with its statutory authority, the Department issues licenses to carriers seeking to transact health insurance business in the State, N.J.S.A. 17:48E-4;

reviews insurance products and rates for compliance with existing regulations, N.J.S.A. 17:48E-13, -13.1; monitors the financial solvency of licensees to ensure product availability in the marketplace, N.J.S.A. 17:48E-37; responds to consumer complaints and inquiries; and educates consumers about insurance products and issues. See, e.g., N.J.S.A. 26:2S-4 (carrier shall disclose to subscriber terms and conditions of health benefits plan).

Under the Health Care Quality Act (the HCQA), N.J.S.A. 26:2S-1 to -28, the Department is also charged with reviewing "managed care plans." N.J.S.A. 26:2S-2 defines a "managed care plan" to mean

> a health benefits plan that integrates the financing and delivery of appropriate health care services to covered persons by arrangements with participating providers, who are selected to participate on the basis of explicit standards, to furnish a comprehensive set of health care services and financial incentives for covered persons to use the participating providers and procedures provided for in the plan.

Tiered benefit plans, like the OMNIA plan that is the subject of this appeal, fall within this broad statutory definition, and have been offered over the past several years by a number of New Jersey carriers, including Horizon. Under a two-tiered benefit plan, the carrier provides a network of providers in both the preferred tier, (Tier 1), where consumers

pay less than the standard level of cost-sharing, and the non-preferred (Tier 2), standard cost-sharing tier.  If the consumer elects to use a Tier 1 provider, the cost-share is lower than the standard cost-share for a Tier 2 provider.

As defined in N.J.S.A. 26:2S-2, the term "carrier" includes a "health service corporation" like Horizon.  In setting up a tiered benefit network, the carrier "may establish criteria and standards for providers of health care services with which it desires to contract, and may establish its own contracting criteria for the providers as it shall determine[.]"  N.J.S.A. 17:48E-10(d).  Once the carrier determines its proposed network, it submits an application to the Department seeking its approval.

N.J.S.A. 26:2S-18 grants the Department the authority to promulgate regulations to carry out the purposes of the HCQA. In this regard, N.J.A.C. 11:24A-4.10(a) states:

> A carrier shall maintain an adequate network
> . . . of [primary care providers (PCPs)],
> specialists and other ancillary providers to
> assure that covered persons are able to
> access services in-network and take full
> advantage of the in-network benefits levels
> when the policy or contract specifies that
> there is a differential between the in-
> network and out-of-network benefits levels
> for one or more covered services . . . .

As applied to an application for approval of a tiered network, the Department has interpreted this regulation to require the

Department to review each tier to determine the "adequacy of the provider network with respect to the scope and type of health care benefits provided by the carrier, the geographic service area covered by the provider network and access to medical specialists[.]" N.J.S.A. 26:2S-18.

Under the Department's regulations, the carrier must meet specific time and distance standards for the various types of providers as to each plan offered. N.J.A.C. 11:24A-4.10(b). With respect to hospitals or "institutional providers," N.J.A.C. 11:24A-4.10(b)(3) provides that:

> For institutional providers, the carrier shall maintain contracts or other arrangements acceptable to the Department sufficient to meet the medical needs of covered persons, and maintain geographic accessibility of the services provided through institutional providers, subject to no less than the following:
>
> i. The carrier shall have a contract or arrangement with at least one licensed acute care hospital with licensed medical-surgical, pediatric, obstetrical and critical care services in any county or service area that is no greater than [twenty] miles or [thirty] minutes driving time, whichever is less, from [90%] of covered persons within the county or service area.
>
> ii. The carrier shall have a contract or arrangement with surgical facilities, including acute care hospitals, licensed ambulatory surgical facilities, and/or Medicare-certified physician surgical practices available in each county or

service area that are no greater than [twenty] miles or [thirty] minutes driving time, whichever is less, from [90%] of covered persons within the county or service area.

iii. The carrier shall have a contract or otherwise agree to cover medically necessary trauma services at a reasonable cost with all Level I or II trauma centers designated by the Department of Health and Senior Services, with the provision of benefits at the in-network level.

iv. The carrier shall have contracts or arrangements for the provision of the following specialized services at in-network benefit levels (if covered by one or more of the carrier's health benefits plans in network, and determined to be medically necessary), so that services will be available within [forty-five] miles or [sixty] minutes average driving time, whichever is less, of [90%] of covered persons within each county or service area:

(1) At least one hospital providing regional perinatal services;

(2) A hospital offering tertiary pediatric services;

(3) In-patient psychiatric services for adults, adolescents and children;

(4) Residential substance abuse treatment centers;

(5) Diagnostic cardiac catheterization services in a hospital;

(6) Specialty out-patient centers for HIV/AIDS, sickle cell disease, hemophilia, and cranio-facial and congenital anomalies; and

(7) Comprehensive rehabilitation services.

According to the Department, its analysis of network adequacy is an "iterative and continual process," because it is "rare that a network submission is complete or adequate upon the initial filing." Thus, the Department frequently asks carriers for additional information necessary to complete the network adequacy review. If the carrier successfully demonstrates that its proposed tiered benefit network is "adequate" under N.J.A.C. 11:24A-4.10(b)(3), the Department will approve the carrier's plan. Once a network is approved, the Department continues to monitor the adequacy of the network and if a network deficiency is detected, it takes corrective action. See N.J.S.A. 26:2S-16; N.J.A.C. 11:24A-2.7.

## II.

Beginning in January 2014, Horizon offered its subscribers a tiered benefit plan known as the Advance Tiered Network ("the Advance plan"). The network had 87,211 subscribers and was comprised of thirty-one hospitals in Tier 1, and thirty-seven hospitals in Tier 2. There was one Tier 1 hospital located in every county in New Jersey under the Advance plan, except Somerset and Cumberland counties. Appellants were participating providers in the Advance plan network: four hospitals were designated as Tier 1 (Kennedy, Lourdes, St. Francis, and

Trinitas), and the other six hospitals were designated as Tier 2 (Capital, Centrastate, Holy Name, JFK Medical Center, Valley Health, and Virtua).

On June 25, 2015, Horizon submitted its application to the Department for network adequacy approval of the OMNIA two-tiered provider network.[2] OMNIA's hospital network was comprised of thirty-five hospitals in Tier 1 and thirty-two hospitals in Tier 2 (including all ten appellants). There is one Tier 1 hospital located in each county in New Jersey, except Warren and Burlington counties. At the time of the application, Horizon projected that 250,000 consumers would enroll in the OMNIA plan, which would represent approximately 6.6% of its total statewide market-share.[3]

Over the course of the next three months, the Department reviewed the adequacy of Horizon's OMNIA network pursuant to N.J.S.A. 26:2S-18 and N.J.A.C. 11:24A-4.10. The application ultimately comprised thousands of pages of documents, including: spreadsheets of PCPs, specialists, and hospitals; enrollment projections by geographic area; and geo-access reports detailing time and distance requirements to designated Tier 1 providers

---

[2] The OMNIA plan was intended to replace the Advance plan.

[3] Horizon provides health benefits to more than 3.8 million members.

for the projected enrollment in the geographic service areas of concern.

Initially, Horizon only submitted its proposed physician network to the Department for review, not its proposed hospital network. As a result, by letter dated August 25, 2015, the Department asked Horizon to provide the completed General Acute Care Hospital tables ("hospital tables"), in addition to other information regarding physicians and specialists.

On September 3, 2015, the Department again asked Horizon to submit a completed copy of the hospital tables for the OMNIA plan. The Department stated that it assumed that the OMNIA and Advance hospital networks were identical, but if they were not, Horizon should provide a comparison of the networks under the plans. Horizon provided the Department with the completed hospital tables for both plans on that same date and, on September 11, 2015, Horizon submitted information regarding the proposed networks compliance with the adequacy standards. Horizon explained that the OMNIA and Advance networks were similar in that they each included a Tier 1 hospital in all but two counties and met geographic access requirements, but differed in that the Tier 1 hospitals in the Advance plan were "mostly small systems," while the Tier 1 hospitals in the OMNIA network were "the largest systems in the State."

Based on its review, the Department found a substantive deficiency in the OMNIA Tier 1 hospital network; obstetrical services in the Burlington County area only reached 88% of the projected membership, not the 90% required under N.J.A.C. 11:24A-4.10(b)(3)(i). By email dated September 15, 2015, Horizon committed to curing this deficiency, and indicated that it wanted the "latitude" to proceed under one of two options, including the option it ultimately implemented, that is, applying Tier 1 benefits for Tier 2 obstetrical services in Burlington County. Based on this commitment, the Department concluded "that the OMNIA Network met the time and distance requirements of N.J.A.C. 11:24A-4.10 and qualified for statewide approval." The Department further found that

> [w]ith regard to the acute care hospital requirements at N.J.A.C. 11:24A-4.10(b)[(3)(1)], the OMNIA Network satisfied the adequacy standard with [thirty-five] hospitals in Tier 1 and [thirty-two] additional in-network hospitals in Tier 2. This means that the OMNIA Network has at least one acute care hospital with medical-surgical, pediatric, obstetrical, and critical care services, within [twenty] miles or [thirty] minutes driving time for 90[%] or more of the OMNIA plans' projected enrollment in each county or service area.

In a final decision issued on September 18, 2015, the Department's Chief of the Office of Managed Care, wrote that the Department had completed its review of Horizon's

application to establish the OMNIA Network. This network is approved [statewide] as of September 15, 2015. On that date, the Department advised the Centers for Medicaid and Medicare Services that it was revising the QHP [qualified health plan] certification to indicate that the OMNIA network was approved.

Overall, any change in operations from those descriptions filed with this application are subject to prior review and approval by the Department. Horizon shall be subject to all provisions of N.J.S.A. 26:2S-1 et seq. and N.J.A.C. 11:24A-1 et seq. . . . .[4]

On November 19, 2015, appellants filed their notice of appeal from the Department's September 18, 2015 final decision. Appellants also filed a motion for a stay of that decision with the Department. On November 30, 2015, the Department denied appellants' motion, and issued a comprehensive forty-page written decision that thoroughly explained its decision approving Horizon's application and determining that the OMNIA plan met all applicable network adequacy requirements.[5]

---

[4] On September 30, 2015, Horizon provided the Department with additional information about the OMNIA plan, including updated hospital tables adding two new Tier 1 hospitals, and responses to the Department's August 25, 2015 request for more information about physicians and specialists.

[5] Pursuant to Rule 2:5-1(b), we have treated the Department's November 30, 2015 decision as its findings of fact and conclusions of law concerning the Horizon application.

On December 7, 2015, we denied appellants' emergent motion for a stay of Horizon's implementation of the OMNIA tiered network plan, but granted appellants' motion for acceleration.

III.

Established precedents guide our task on appeal. Our scope of review of an administrative agency's final determination is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "An appellate court affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539, cert. denied, 449 U.S. 983, 101 S. Ct. 400, 66 L. Ed. 2d 245 (1980)). "Particularly in the insurance field, the expertise and judgment of the [Department] may be allowed great weight." In re Comm'r's Failure to Adopt 861 CPT Codes, 358 N.J. Super. 135, 149 (App. Div. 2003). "The party challenging agency action bears the burden of overcoming these presumptions." Ibid.

Moreover, "[a]n agency's interpretation of its own rule is owed considerable deference because the agency that drafted and promulgated the rule should know the meaning of that rule." N.J. Healthcare Coal. v. N.J. Dep't of Banking & Ins., 440 N.J. Super. 129, 135 (App. Div.) (quoting In re Freshwater Wetlands

14                                                          A-1211-15T3

Gen. Permit No. 16, 379 N.J. Super. 331, 341-42 (App. Div. 2005)), certif. denied, 222 N.J. 17 (2015). A reviewing court "may not second-guess those judgments of an administrative agency which fall squarely within the agency's expertise." In re Stream Encroachment Permit, Permit No. 0200-04-0002.1 FHA, 402 N.J. Super. 587, 597 (App. Div. 2008).

"An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). In determining whether agency action is arbitrary, capricious, or unreasonable, an appellate court must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Stallworth, supra, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

We are not, however, in any way "bound by the agency's interpretation of a statute or its determination of a strictly

legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

Applying these principles, and for the reasons that follow, we discern no reason to disturb the Department's decision approving the OMNIA plan.

A.

Appellants argue that the OMNIA network did not meet the network adequacy requirements set forth in N.J.A.C. 11:24A-10(b)(3), because at the time of approval Horizon did not have "signed agreements" with all of the Tier 1 hospitals, thereby making it impossible for the Department to determine if the hospital network complied with the regulatory standards. We disagree.

N.J.A.C. 11:24A-10(b)(3) provides that "[f]or institutional providers, the carrier shall maintain contracts or other arrangements acceptable to the Department sufficient to meet the medical needs of covered persons, and maintain geographic accessibility of the services[.]" (emphasis added). The carrier shall have a "contract or other arrangement" with certain specific providers, including acute care hospitals, trauma centers, and specialists within a certain time and distance from 90% of the covered subscribers. N.J.A.C. 11:24A-10(b)(3)(i)-(iv).

Horizon was statutorily authorized to enter into contracts with the hospitals or "participating" providers. N.J.S.A. 17:48E-10; N.J.A.C. 11:24A-4.15. The contracts required the hospitals "to accept agreed-upon payments for specified services as payment in full, thus relieving the subscriber of any further financial burden and, in turn, require[d] Horizon to pay each participating provider directly, this doubtlessly to encourage greater participation in the network." Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of N.J., 345 N.J. Super. 410, 413-14 (App. Div. 2001).

It is undisputed that at the time of the Department's approval, Horizon had automatically renewable contracts ("Network Hospital Agreements") in place with all of the hospitals participating in the OMNIA network, including all the Tier 1 hospitals, as well as appellants and the other hospitals in Tier 2. As the Department explained in its November 30, 2015 decision, it was "important to note that . . . all of the Tier 1 and Tier 2 hospitals participating in the OMNIA Network were already contracted with Horizon and considered in-network. Establishment of the OMNIA Network did not require re-contracting with these hospitals."

Thus, contrary to appellants' assertions, Horizon fully complied with N.J.A.C. 11:24A-10(b)(3). At the time of the

Department's approval of the OMNIA plan, Horizon had standard contracts in place with all of the provider hospitals in the network, under which the hospitals agreed to participate in Horizon's health services plan and to receive payment directly from Horizon on a set-fee basis. The existence of these contracts was sufficient to enable the Department to ensure adequate consumer access to necessary medical care and providers so that the benefits provided under the OMNIA plan were not illusory.

Further, the Department properly found that "N.J.A.C. 11:24A-4.10 does not require carriers to have contracts with network providers that specif[y] a particular cost-sharing tier for consumers in order to meet network adequacy. The rules merely provide that the carrier have a contract or other arrangement acceptable to the Department." The Department explained that a carrier could, for example, satisfy this requirement by: contracting with a provider for inclusion in a network at a specific cost-sharing tier; entering into a general contract that is not network or plan-specific and does not specify the cost-sharing for consumers, thereby requiring a hospital to participate in all of its networks without regard to tier assignments; and applying Tier 1 cost-sharing for consumers at certain facilities and/or providers to expand access or meet

network adequacy standards. Thus, the Department found that the general contracts between Horizon and the in-network OMNIA providers met the regulatory requirement. The Department's interpretation of its own rule is owed considerable deference. N.J. Healthcare Coal., supra, 440 N.J. Super. at 135. Therefore, we reject appellants' contention on this point.

B.

Appellants next argue that at the time of the approval the OMNIA Tier 1 hospital network did not meet the adequacy standards, set forth in N.J.A.C. 11:24A-4.10(b)(3)(i), for hospital obstetrical services in Burlington County. This contention lacks merit.

As noted above, N.J.A.C. 11:24A-4.10(b)(3)(i) requires carriers to have "a contract or arrangement" with at least one licensed acute care hospital with obstetrical services "in any county or service area that is no greater than [twenty] miles or [thirty] minutes driving time, whichever is less, from [90%] of covered persons within the county or service area." During its review, the Department initially determined that the OMNIA Tier 1 hospital network was deficient in that obstetrical services in Burlington County reached only 88% of the projected membership, not 90% as required by the rule.

Although the OMNIA hospital network did not initially meet the adequacy requirements, Horizon responded to the Department's determination by committing to apply Tier 1 cost-sharing for obstetrical services at Virtua, a Tier 2 hospital located in Burlington County. Thus, contrary to appellants' contention, there was no longer a deficiency in the OMNIA network because at the time of the Department's approval, Horizon had an agreement with Virtua -- a licensed Tier 2 hospital located within twenty miles or thirty minutes driving time of 90% of the persons covered -- to provide obstetrical services to Burlington County subscribers. N.J.A.C. 11:24A-4.10(b)(3)(i). That arrangement clearly met the regulatory requirements for network adequacy, curing the previous inadequacy prior to the Department's approval. Ibid.

C.

Appellants next contend that the OMNIA Tier 1 hospital network failed to meet the network adequacy standards established by the Department for trauma centers. Again, we disagree.

The Department of Health has designated three hospitals in New Jersey as Level I trauma centers (UMDNJ-University Hospital, Robert Wood Johnson University Hospital, and Cooper Hospital/University Medical Center), and seven hospitals as

Level II trauma centers (Hackensack University Medical Center, St. Joseph's Hospital and Medical Center, Jersey City Medical Center, Morristown Memorial Hospital, Capital Health, Jersey Shore Medical Center, and AtlantiCare Regional Medical Center). N.J.A.C. 11:24A-4.10(b)(3)(iii) provides that "[t]he carrier shall have a contract or otherwise agree to cover medically necessary trauma services at a reasonable cost with all Level I or II trauma centers designated by the Department of Health and Senior Services, with the provision of benefits at the in-network level."

Horizon fully satisfied this requirement. Horizon contracted with the ten trauma centers to place them in-network; eight trauma centers were designated as Tier 1 providers (RWJ, Cooper, Jersey City Medical Center, Hackensack, Jersey Shore Medical Center, Morristown Memorial, St. Joseph's Hospital, and AtlantiCare); and two trauma centers were designated as Tier 2 providers (Capital Health and UMDNJ).

Contrary to appellants' contention, and as the Department expressly found, "[n]othing in the regulation requires that all trauma centers be placed in the most preferred tier, only that they be in-network." It is undisputed that Horizon has a contract with the ten trauma centers to provide benefits at the "in-network level" as required by N.J.A.C. 11:24A-

21

4.10(b)(3)(iii).  Therefore, the Department properly found that the OMNIA network was adequate for trauma services.[6]

### D.

Appellants assert that before determining whether the OMNIA network was adequate, the Department was required to consider and make a specific finding that the public interest would be served by approving Horizon's proposal.  Appellants contend that OMNIA's two-tiered hospital network "endangers" them and the other hospitals that Horizon selected for Tier 2, and interferes with the "continuity of patient care."  Appellants also complain that Horizon was not "transparent" with regard "to the OMNIA plan's tiering decisions," which "makes informed health care choices impossible."  These contentions lack merit.

The Department's role in approving a health service corporation's proposed tiered benefit network is limited by the HCQA to the establishment of standards for the "adequacy of the provider network with respect to the scope and type of health care benefits provided by the carrier, the geographic service area covered by the provider network[,] and access to medical

---

[6] It is also important to note that N.J.A.C. 11:4-37.3(b)(2) specifically requires a health benefits plan, like the OMNIA network, to "provide that the cost sharing applied to the covered person for emergency care shall be the same regardless of whether the services were rendered by network or out-of-network providers."

specialists, when appropriate[.]" N.J.S.A. 26:2S-18. The Department established these required network adequacy standards when it promulgated N.J.A.C. 11:24A-4.10. As discussed in detail above, the Department carefully applied these standards and determined that the OMNIA network was adequate.

It is well established that an administrative agency, like the Department, may "only act reasonably within the scope of its delegated authority." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 600 (2013). Thus, "an agency may not issue a regulation that is outside 'the fair contemplation of the delegation of the enabling statute,' or that is otherwise 'inconsistent with [its] legislative mandate.'" N.J. Healthcare Coal., supra, 440 N.J. Super. at 136 (citation omitted) (quoting N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222-23 (1999)).

Turning to the arguments raised by appellants in this portion of their brief, there is no provision in any of the governing statutes that requires the Department to make a specific finding that a tiered benefit network is "in the public interest" before it can be approved. Indeed, none of the statutory provisions cited by appellants that mention the "public interest" relate to network adequacy. For example, appellants cite N.J.S.A. 17:1C-19, which provides that

"establishing a dedicated funding mechanism for the operations of the New Jersey Real Estate Commission," to enable the Department to "maintain an adequate level of financial oversight" is "in the public's interest." Other laws cited by appellants require the Department to issue a certificate of authority, N.J.S.A. 17:48E-4(a), and a certificate of incorporation, N.J.S.A. 17:48-5, to a health service corporation if the Department is satisfied that the issuance "would not be contrary to the public interest." See Radiological Soc. of N.J. v. Sheeran, 175 N.J. Super. 367, 384 (App. Div. 1980) ("Commissioner has been given broad powers" under N.J.S.A. 17:48A-3 "to 'supervise' a medical service corporation so that its 'condition or methods of operation are not such as would render its operations hazardous to the public or its subscribers'"), certif. denied, 87 N.J. 311 (1981).

However, the HCQA contains no similar requirement. Thus, the Department is not currently statutorily authorized to review Horizon's selection of network providers under the amorphous "public policy" standard asserted by appellants.

That having been said, we recognize that "the public interest is an added dimension in every administrative proceeding . . . , and, in a sense, the public is an omnipresent party in all administrative actions." City of Hackensack v.

24

<u>Winner</u>, 82 <u>N.J.</u> 1, 30 (1980). However, the public interest is plainly served when an administrative agency follows the governing statutes and regulations, conducts a prompt and timely review of an applicant's proposal, and renders a fully supported, thoughtful final decision that withstands appellate review. That is the case here.

Appellants' other arguments on this point also lack merit. The Legislature has not authorized the Department to review a carrier's hospital selection criteria for a tiered benefit network, except to ensure that subscribers have sufficient access to care under the plan because the network is adequate. <u>See</u> <u>Radiological Soc. of N.J.</u>, <u>supra</u>, 175 <u>N.J. Super.</u> at 384 (Commissioner "has not been given the power to become so involved in Blue Shield's activities that he [or she] controls the way the plan operates").

There is also no statutory or regulatory procedure for the Department to determine the financial impact of the tier designation on a hospital, or to compel carriers to include, for example, all faith-based or urban hospitals in Tier 1. In fact, "the Legislature specifically recognized the right of Horizon to enter into provider contracts wherein it could exercise some leverage as to price in return for direct payment." <u>Somerset Orthopedic Assocs.</u>, <u>supra</u>, 345 <u>N.J. Super.</u> at 420. Nor, as the

Department correctly points out, does it have the authority to require Horizon to allow appellants to apply for Tier 1 status. The Legislature only requires carriers to grant pharmacies and pharmacists "the right to participate as a preferred provider or as a contracting provider, under the same terms and conditions currently applicable to all other preferred or contracting providers[.]" N.J.S.A. 17:48-6j(2). The Legislature has not extended that right to hospitals.

Contrary to appellants' next contention, the HCQA does not require the Department to consider possible "continuity of care issues" when it reviews an application for approval of a tiered benefit network. However, because provider networks are fluid, N.J.S.A. 26:2S-9.1 already protects covered persons under certain situations when their in-network physician or hospital leaves the network. This statute provides for varying lengths of covered treatment (post-operative, oncology, psychiatric, and obstetrical), including services in an acute care hospital, in the event the in-network physician "is no longer employed by or under contract with the carrier[.]" Ibid.

Moreover, before purchasing a tiered product like OMNIA, the consumer has the ability to review the hospitals and health care providers in each network tier. N.J.S.A. 26:2S-4 and -5.

Thus, consumers are fully aware what hospitals and providers they can use when they select a tiered benefit network.

There is also no requirement in the HCQA that a carrier publicly disclose the criteria it used to evaluate the hospitals for inclusion in, or exclusion from, a particular tier. Instead, N.J.S.A. 26:2S-5 requires carriers to disclose to subscribers specific information about the provider network, including a directory of participating providers. OMNIA complied with this requirement in the present case. Therefore, we reject appellant's contention on this point.

E.

Finally, appellants assert that the Department conducted a rushed review of Horizon's application, did not fully explain its decision, and improperly failed to permit their input. We disagree.

The record reflects that the Department's review of Horizon's application was both extensive and deliberate. Horizon submitted its application on June 25, 2015 and the Department did not complete its review and approve the OMNIA network until September 18, 2015. During this period, the Department obtained the necessary information to conduct a meaningful review of the adequacy of the hospital network under N.J.S.A. 26:2S-18 and N.J.A.C. 11:24A-4.10, including the

27

hospital tables and geo-access reports. It posed questions to Horizon and reviewed the carrier's responses. While the Department's September 18, 2015 final decision did not detail the agency's findings of fact and conclusions of law, it subsequently rendered a forty-page written decision fully explaining the factual and legal basis for its approval of the OMNIA network.

Contrary to appellants' contention, the fact that an entity may be impacted by an agency decision does not, in and of itself, give rise to a right to notice and participation in the administrative process. <u>Elizabeth Fed. Sav. & Loan Ass'n v. Howell</u>, 24 <u>N.J.</u> 488, 505 (1957). Moreover, an administrative agency must conduct a "contested case" hearing only when "the legal rights, duties, obligations, privileges, benefits[,] or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing[.]" <u>N.J.S.A.</u> 52:14B-2. Appellants have not demonstrated the existence of a constitutional or statutory right to a contested case-type hearing concerning a carrier's application for approval of a tiered benefit network.

As for the balance of any of appellants' arguments not expressly discussed above, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

IV.

In sum, we conclude that the Department's decision approving Horizon's application to establish the OMNIA network was accomplished in strict accordance with the current statutes and regulations applicable to its review. Under these circumstances, appellants' contention that the HCQA should be amended to reflect their view of how tiered benefit networks should be implemented can only be addressed by the Legislature. "We do not pass judgment on the wisdom of a law or render an opinion on whether it represents sound public policy. That is the prerogative of our elected representatives." Caviglia v. Royal Tours of Am., 178 N.J. 460, 476 (2004) (citations omitted). Stated simply, "courts do not act as a super-legislature." Trautman ex re. Trautman v. Christie, 211 N.J. 300, 307 (2012) (quoting Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222 (1985)).

Having determined that the record fully supports the Department's decision that the OMNIA network was adequate under N.J.S.A. 26:2S-18 and N.J.A.C. 11:24A-4.10(b)(3), and that its

29

determination was neither arbitrary, capricious, nor unreasonable, our task is complete.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1211-15T3